THE HAND GOLD MINING COMPANY, plaintiff in error, *vs.* JOHN A. PARKER *et al.*, defendants in error.

A provision in the charter of a mining company, that the right-of-way over unoccupied lands, for the carriage of water necessarily used in gold mining, might be appropriated by the payment of just compensation, is not an unconstitutional exercise of the right of eminent domain.   The development of the mineral resources of the state, and the production of the metal from which our constitutional currency is stamped, are of public benefit.

Injunction.   Eminent domain.   Corporations.   Constitutional law.   Before Judge LESTER.   Lumpkin County.   At Chambers.   September 8, 1877.

Reported in the decision.

W. P. PRICE; H. P. BELL; McCAY & TRIPPE, for plaintiff in error.

C. D. PHILLIPS; WIER BOYD, for defendants.

WARNER, Chief Justice.

The complainants filed their bill against the defendant, in which they alleged that they were the owners of certain described lots of land, in the county of Lumpkin, which are of great value for mining purposes; that the defendant has notified them, in consequence of their refusal to grant it the right-of-way over their land for the purposes specified in its charter, to appoint an appraiser to assess the damages, etc.

and that, in default of their making such appointment, application would be made to the ordinary to make the appointment of an appraiser, in accordance with the terms of its charter, which the complainants allege is unconstitutional, null and void, so far as it authorizes the defendant to take private property for the use of its company for the purposes specified therein. The complainants prayed for a perpetual injunction to restrain the defendant, its agents and servants, from all further efforts to construct its flumes, ditches and canals over or through the complainants' said described lands. The chancellor granted the injunction prayed for, on the ground that the act of 1874, granting the defendant's charter, in so far as it authorized the taking of private property for the purposes as therein expressed, was unconstitutional and void, whereupon the defendant excepted.

The first section of the act incorporates "The Hand Gold Mining Company" for the purpose of diverting or turning the waters of Yahoola river and the waters of Cane creek from their natural channel, by dam, ditch or aqueduct of any kind, so as to work for gold or any other valuable mineral, according to the hydraulic process, in the county of Lumpkin, on any lands it now owns, or may hereafter own, or that it may be possessed of either by purchase or lease. The fourth section of the act grants the power to said company to construct through or over any vacant lands in said county of Lumpkin, not represented by any legal owner or claimant, its main canal, ditch, flume, trestle-work or aqueduct, for the purpose of developing the mineral resources of the adjacent lands, and also provides for the assessment of damages for the lands thus taken. The fifth section of the act provides that if any person shall refuse to grant to said company the right-of-way through his lands, or endeavor to require exorbitant damages from said company for any right or privilege necessary for the successful prosecution of said mining operation, then it provides for the appointment of arbitrators to assess the damages, with the right of an appeal from their decision by either party to the

.superior court. The sixth section of the act further provides, that said company, by itself, its agents or superintendents, or either of them, shall have full power and authority to turn the water from said ditch or ditches by lateral ditches, or otherwise, to be used by them for mining purposes, in such manner as they may determine, on any lot or lots over which they may have jurisdiction, and to cause such water so turned to flow off and pass over any lot or lots belonging to any person whatever: provided, that damages shall be assessed therefor as specified in the other sections of the act.

It appears from the evidence in the record, that there is a belt of territory in the county of Lumpkin which is rich in gold; that is to say, the land in the gold belt in that county, contains valuable gold mines, which are valuable for mining purposes only; that owing to the scarcity of water thereon, said gold mines cannot be successfully worked, and the mineral wealth thereof developed; that the defendant, under its charter, had expended a large amount of money in bringing water from the Yahoola river, a distance of twenty miles, for the purpose of successfully working and developing the gold mines on its own land in that gold belt, when it was stopped by the injunction before its ditch or canal had reached the same. The question as to the right of the defendant to construct and open lateral ditches under the sixth section of its charter, is not now before us, inasmuch as the defendant has not attempted to open any lateral ditches, so far as is disclosed in the record, and may never attempt to do so. The question, therefore, is whether the defendant has the lawful power and authority, under the constitution, to take the private property of the complainants for the use of their ditch or canal, for the purpose of extending the same to their own land for the object, as authorized by its charter, on the payment of just compensation therefor? That private property cannot be taken for the *exclusive* use of private persons, with or without just compensation, is a fundamental principle of the law. Does the evidence in the record of this case show that the general

assembly have granted the power to the defendant, in its charter, to take private property for the use of its ditch or canal, as therein specified, for the *exclusive* use of the defendant? The legal presumption to start with is, that the general assembly, in the exercise of its right of eminent domain, as expressed in the defendant's charter, had sufficient evidence before it, that to do so, would be for the use of the public, or for the public good. There were eleven witnesses sworn for the defendant, besides the defendant's president, some of whom were experienced miners, all of them stating, in substance, that owing to the scarcity of water on the gold lands in question, the same cannot be successfully worked, and that water cannot be obtained for that purpose from any other source than by means of defendant's ditch or canal, and that the same would greatly facilitate the production of gold on said lands. There were but two witnesses examined by the complainants, neither of whom denied the statements of the defendant's witnesses as to the benefit which would result from the introduction of the water, by defendant's ditch or canal, into the gold belt of territory, but said it would, in their opinion, injure the value of complainants' land. The evidence in the record, that the introduction of the water by the defendant's ditch or canal, into the gold belt in question, would greatly facilitate and increase the production of gold in that part of the country, most strongly preponderates in favor of the legislative theory, that it would be for the public good. By the constitution of 1868, the general assembly have the power to incorporate mining companies, and from the number of companies that have been incorporated, and the privileges therein granted, it would seem to have been the policy of the state to encourage that branch of industry, by inducing the investment of domestic and foreign capital for the purpose of developing its hidden wealth, for the benefit of her people. The general assembly must be presumed to have known the value of the gold lands in the belt of territory in question, as well

as its topography, its condition, the scarcity of water thereon, as well as the necessity which existed for its introduction by the means proposed by the defendant to enable it successfully to work its own lands in that gold belt, for the gold which was imbedded in the bowels of the earth, and which would not do the defendant or any one else any good, so long as it remained there undeveloped. Therefore, in view, not only of the benefit that would primarily result to the defendant, by enabling it to extract the precious metal from the bowels of the earth on its own land, where it was doing nobody any good, but also in view of the public good which would necessarily result in an increase of the constitutional currency of the country, and thereby add to the permanent wealth of the state, the general assembly, by its act of incorporation, proposed to the defendant that if it would invest its capital for the purpose of constructing a ditch, or canal, from the Yahoola river and Cane creek, so as to convey the waters thereof to its own lands in the county of Lumpkin, as before described, so as to enable it successfully to work for gold according to the hydraulic process thereon, that it would exercise the right of eminent domain in its behalf, in granting to it the right of way for its ditch, or canal, for the conveyance of the water, as aforesaid, and for the purpose aforesaid, upon its making just compensation, as provided in the act, for any private property that might be taken for the right of way for said ditch or canal. The defendant accepted the terms of the charter, and has expended a large amount of money in constructing said ditch, or canal, and was progressing with it to its completion when restrained by the injunction prayed for by the complainants. The right of eminent domain may be exercised by the general assembly in this state when it is for the public good, either through the officers of the state, or through the medium of corporate bodies, or by means of individual enterprise: provided, always, that just compensation is made for the property taken. Code, §§2,222, 2,223, 2,224. *Young vs. McKenzie & Harrison et al.*, *3d Kelly's Rep.*, 31;

*6th Ga. Rep.*, 130.   Did the general assembly, in the exercise of the right of eminent domain, in granting the right of way for the defendant's ditch, or canal, in the manner and for the purpose expressed in its charter, upon just compensation being made therefor, violate the constitution of the state? In other words, was the grant of the right of way to the defendant to construct its ditch, or canal, for the purpose therein expressed, made for the *exclusive* use and benefit of the defendant, or was the main inducement in making the grant by the general assembly, the public good, to-wit: the increased production of gold for the use of the public? Gold and silver is the constitutional currency of the country, and to facilitate the production of gold from the mines in which it is imbedded, for the use of the public, is for the public good, though done through the medium of a corporation, or individual enterprise.

The increased production of gold from the mines of Lumpkin county, by the means as provided for in the defendant's charter, must necessarily be for the public good, inasmuch as it will increase, for the use of the public, a safe, sound, constitutional circulating medium, which is of vital importance to the permanent welfare and prosperity of the people of the state of Georgia, as well as of the people of the United States.   But if there was any reasonable doubt as to the exercise of the right of eminent domain by the general assembly, as provided in the defendant's charter, being for the public good, (and we think there can be none, in view of the evidence in the record,) still that doubt should be resolved in favor of the constitutionality of the act.   The defendant's charter was granted since the adoption of the Code, and if it should abuse the privileges granted to it, as was suggested on the argument, it will be competent for the general assembly to withdraw the franchise granted, or modify the same at its pleasure, as was held by this court in 49 *Ga. Rep.*, 151.

The case of *Loughridge vs. Harris*, in the 42 *Ga., Rep.*, 500, cited by the defendants in error, was wholly unlike the

case now before us, in several of its important features, one of which notably is,.that, by the act of 1869, manufacturing companies and individuals, were authorized to judge of the expediency of exercising the right of eminent domain, instead of the general assembly, provided·the company, or individual, owned both banks of the stream on which the mill or mills were to be erected. In view of the evidence contained in the record, as to the necessity for the general assembly to exercise the right of eminent domain, in granting the right of way for the defendant's ditch or canal, to convey the water from Yahoola river and Cane creek into the gold belt of territory in the county of Lumpkin, for the successful working of the valuable gold mines to be found there, so as to increase the production of gold for the use of the public through the medium of the defendant's corporation, the general assembly did not.exceed its constitutional power in making the grant to the defendant of the right-of-way, as expressed in its charter, for the purpose and upon the terms as therein expressed. Let the defendant's ditch or canal be constructed in pursuance of the grant in the defendant's charter, and let the water from Yahoola river and Cane creek flow therein into the gold belt of Lumpkin county, where, in the judgment of the general assembly of the state, the public good requires it should flow, so as to enable the defendant to increase the production of gold on its own land, not only for its own·use and benefit, but, through its agency and organization, for the use and benefit of the public, which, at the present moment, is greatly in need of an increase of that constitutional currency recognized by the fathers of the republic in 1787 as being of vital importance to the welfare and permanent prosperity of the people.

Let the judgment of the court below granting the injunction be reversed.