## WRIGHT *v.* DuBIGNON.

1. It is a general rule of law in force in this State that, in the absence of a contract giving him the right so to do, the tenant can not lawfully remove fixtures annexed to the freehold, which he has placed on leased land. The exception to this rule exists only in the case of trade fixtures.

   (a) Section 3120 of the Civil Code is construed to refer to trade fixtures.

   (b) The fixtures sought to be removed in the present case were not trade fixtures.

2. Domestic or ornamental fixtures which a tenant has attached to a dwelling-house or the grounds on which the same is located, to promote his domestic comfort, and which may be easily severed and made equally useful to him in another house, may be removed by him during his term. Aliter as to such as are substantial additions to the house, or which if taken away would be injurious to the freehold.

3. A servant's room, metallic gutters attached to the roof of a house, water-pipes laid under the ground by a tenant on leased premises, become, when constructed and attached, a part of the freehold, and can not be lawfully dissevered from the land by the tenant against the will of the landlord, even though at the time of their erection the tenant intended to remove them at the expiration of his term.

4. The charge of the trial judge to which exceptions were taken, as well as the verdict which was rendered, not being in accord with the principles of law announced above, a new trial should have been granted.

Argued January 13, — Decided February 7, 1902.

Equitable petition. Before Judge Bennet. Glynn superior court. August 17, 1901.

*Owens Johnson* and *D. W. Krauss,* for plaintiff, cited: Civil Code, §§ 3049, 3119, 3120; 39 *Ga.* 471; 68 *Ga.* 630; 71 *Ga.* 287; 74 *Ga.* 73; 94 *Ga.* 100; 96 *Ga.* 493; 98 *Ga.* 627; 105 *Ga.* 23; 2 Taylor, L. & T. (8th ed.) § 547; 8 Am. & Eng. Enc. L. (1st ed.) 46, 48, 49; Tiedeman, Real Prop. § 6; 12 Am. Rep. 393; 35 Am. Dec. 266.

*W. E. Kay,* for defendant, cited: Civil Code, §§ 3049, 3120,

. and Georgia cases cited above; 4 Gray, 256, s. c. 64 Am. Dec. 64; Tyler, Fixtures (ed. of 1877), 153, 455; 13 Am. & Eng. Enc. L. (2d ed.) 639–647, 655.

LITTLE, J.    James B. Wright filed an equitable proceeding in the superior court of Glynn county against John E. duBignon, in which he sought to restrain the defendant from removing certain fixtures placed by him on a lot of land which was owned by the plaintiff. It was alleged that the fixtures which the defendant sought to remove were permanent and such as were attached to the freehold. The defendant, in his answer, admitted that it was his purpose to remove the fixtures, and insisted that he had a right to do so, because he had rented the lot from the plaintiff for a term of years, and the fixtures were in the nature of conveniences to the house which he proposed to occupy as a dwelling for himself and family, and they had been erected by him with the intention of removing them at the expiration of his term, and plaintiff had consented that he should remove them at that time.    The case was submitted to a jury; and while the evidence was in some respects directly conflicting, that of the plaintiff tended to show that he was the owner of the land and rented it to the defendant for a term of three years; that the defendant desired to have certain improvements done on the house, to which the plaintiff agreed, and gave him a check for one hundred dollars; that in addition to certain repairs placed on the interior of the house the defendant erected a servant's room attached to the main body of the dwelling, attached to the roof certain galvanized iron gutters as receptacles for rain-water, laid under the ground iron pipes for the purpose of conducting water and maintaining a fountain, made a cement walk, and other improvements; that there was no agreement, expressed or implied, between the defendant and himself that these fixtures should be removed by defendant at the expiration of his term of lease; and that their removal would be an injury to the freehold.    On the contrary, the evidence for the defendant tended to show, in relation to the improvements and fixtures which were constructed, that the plaintiff sent defendant a check for one hundred dollars to have certain repairs made and work done in the interior of the house, but declined, on defendant's application, to put up a servant's room in the yard, and defendant then told the plaintiff that if he would not build the servant's house, as he (defendant) was compelled to have one, he would do so himself, which

he did; that the repairs on the inside of the house cost very much more than the hundred dollars furnished by plaintiff; that he paid on the erection and furnishing of this servant's room more than one hundred dollars; that he paid eighteen dollars to have gutters put to the house, and something like seventy-five dollars for putting in a fountain and cement walk, and for plumbing, water-spigots, etc. These payments were met from defendant's funds, and the work was necessary for his comfort and convenience in occupying the house. He caused these improvements to be made with the intention of removing them at the expiration of his lease, and in having the work done he had directed it to be constructed with this end in view. Defendant also admitted that in addition to the removal of the servant's house, etc., which he alleged could be done without injury to the property, it was his purpose to remove the flowers which the lady members of his family had planted and cared for.

There was much evidence introduced by the respective parties, but the above brief outline is, in view of the application of the legal principle which we think controls the case, sufficient for the purposes of this decision. The jury returned a verdict for the defendant, giving him the privilege of removing from the premises, the servant's house, the gutters, and the water-pipes; and requiring him to deposit the sum of fifty dollars with the court, to cover the expense of repairs necessary to put the house in as good condition as it was before; and a decree was entered accordingly. The plaintiff submitted a motion for a new trial, on a number of grounds. Inasmuch, however, as the sole question involved in the case relates to the right of a tenant to remove from a dwelling-house fixtures of the character indicated which he had placed thereon and for which he had paid with the intention of removing them, it is unnecessary to consider and pass upon the grounds of the motion seriatim, but we will address ourselves to a consideration of the question of the right of the tenant so to remove. It will be noted, from the statement of the case made above, that the answer of the defendant sets up, among other alleged facts, that the plaintiff had agreed with him that he should have the right to remove the improvements or fixtures at the termination of his lease. We have diligently searched the brief of evidence to ascertain whether this averment in the petition was supported by the evidence of any

witness who testified in the case; for if that fact had been established, it would have materially altered the disposition of the case under well-defined rules of law.   Our examination, however, fails to disclose the existence of any such evidence in the record, and the only question which we have to consider is the legal right of a tenant to remove fixtures of the character indicated in this case, from the rented premises, in the absence of a contract allowing him so to do.   No point is made that the removal contemplated by the defendant was out of time, as the existing status in that respect was preserved between the parties by a written agreement.

1. By the Civil Code, § 3049, it is declared that "Anything intended to remain permanently in its place, though not actually attached to the land, such as a rail fence, is a part of the realty and passes with it."   Section 3119 of the same code declares that the tenant "can not cut or destroy growing trees, remove permanent fixtures, or otherwise injure the property."   In defining realty the code (§ 3045) declares that real estate includes all lands and the buildings thereon, and all things permanently attached to either. So it is unnecessary to go beyond the terms of our statute law to ascertain what are fixtures, or to find an authority declaring that they are a part of the land, and may not be removed by a tenant. Our code is in entire harmony with the common law on this subject, one of the rules of which is, "Fixtures annexed to the freehold are prima facie the property of the owner of the soil."   It is, however, insisted on the part of the defendant in error that the ancient rule, which restricted the right of a tenant as to the removal of improvements in the nature of fixtures made on the leased premises, has been mitigated and its harshness practically destroyed; that the law is now being more liberally interpreted, in favor of the rights of the tenant to remove improvements and fixtures made by him for his own convenience, than it formerly was. To support these propositions, and as authority for his contention that the defendant had the right to remove the fixtures which are the subject-matter of the case in hand, counsel cites the Civil Code, § 3120, which declares: "A tenant during the term or a continuance thereof, or while he is in possession under the landlord, may remove fixtures erected by him.   After the term and possession are ended, they are regarded as abandoned to the use of the landlord, and become the latter's property."   Apparently there is a con-

flict between the rule of law laid down in this section and that which is found in section 3119, above quoted. If we take the words of section 3120 literally they seem to support the contention made by the defendant. However, the conflict is more apparent than real. The section last cited is not an enactment of our legislature, nor is it the rule of the common law as it stands stated, but it was codified from a decision of this court in the case of *Youngblood* v. *Eubank*, 68 *Ga.* 630. This does not make it any the less the law. But under the rule of construction, which is not only fair and reasonable but which has been uniformly followed by this court, we are at liberty, in order to ascertain the meaning of the section, to refer to the case from which it was codified, and interpret it in the light of the decision there rendered. *Calhoun* v. *Little*, 106 *Ga.* 336. It may be remarked, however, that while the words contained in this section were taken from the first headnote in *Youngblood* v. *Eubank*, supra, it will be found on examination that the headnote was prepared by the reporter and not by the court, and that the principle announced in the headnote is not supported by the decision which was rendered. The facts upon which that decision was predicated show that the fixtures which were sought to be removed were temporary shanties, shelters, pens, stocklots, etc., which had been placed on the leased premises by a tenant who was engaged in the sawmill business, and the structures had been erected for his use and convenience in such business; and the entire decision deals with a class of fixtures known as "trade fixtures," and does not undertake to explain the law relating to any other kind of fixtures. Mr. Justice Speer, in the course of the opinion there rendered by him, uses this language: "The custom set up by the evidence is in accord with the common-law rule as to the rights of tenants to remove fixtures made or erected by them." He then quotes the rule of the common law, above set out, that "Fixtures annexed to the freehold are prima facie the property of the owner of the soil." After stating this proposition he further says: "In aid of the tenant, however, and in favor of trade, an exception is engrafted upon that rule, enabling him to sever the fixtures made by him and so regain his property in them." The point in the case just cited was really not the right of the tenant to remove fixtures, but the time in which he might remove trade fixtures, and the opinion as a whole was directed to this point, and

the extracts quoted above are the only authority for the statement contained in the headnote, which is embodied in the Civil Code, § 3120. Being so, it is clear, beyond question, that the fixtures which it was ruled might be removed by a tenant were only those which come under the definition of trade fixtures.

So that, in interpreting this section of the code, we have no difficulty in arriving at the conclusion that the section must be construed to refer only to trade fixtures. So interpreting it, it is in entire harmony with other sections of the code first above quoted. Not only so, but we are also in entire harmony with the great current of adjudicated cases, as well as the conclusions of all modern text-writers on this subject. Chief Justice Holt once ruled that trade fixtures might be removed by the tenant during his term, not by virtue of any special custom, but by the common law in favor of trade and to encourage industry. Mr. Taylor in his treatise on Landlord and Tenant, vol. 2, § 545, says: " As regards fixtures, it may be stated in general terms, that a tenant may take away whatever he erects for the purpose of carrying on trade, whether it be machinery or buildings, even though affixed to the soil or freehold. To the same effect see Ewell on Fixtures, 84, 89, 91. Under the principle above stated it has been ruled that a tenant who was a soap-boiler, and who for the convenience of his trade put up vats and copper tables upon ⸱the demised premises, might remove them during his term. Similar adjudications have been made as to a baker's oven, salt-pans, carding-machines; steam-engines and boilers, cider-mills, furnaces, ⸱ice-houses, platform-scales, copper-stills; counters or counting-rooms nailed to the floor; heavy machinery, such as a trip-hammer, forge-blower, or the like. And there can now be no doubt that the ancient rule in relation to fixtures has been so modified as to trade fixtures that a tenant may remove such from the leased premises during his term. For a very full discussion of the doctrine of trade fixtures, see the opinion of Mr. Justice Cobb, in the case of *Charleston Railway Co.* v. *Hughes*, 105 *Ga.* 23, 24. The defendant, however, can gain nothing under this view of the law, because the fixtures which he sought to remove were permanent in character, and it was not claimed that they came under the definition of trade fixtures.

2. Nor do we think that the fixtures which the defendant claimed the right to remove come in that class known as " domestic

or ornamental fixtures," and which under certain circumstances a tenant has the right to remove during his term. Mr. Taylor in his work above cited, § 547, says: "Domestic fixtures are all such articles as a tenant attaches to a dwelling-house, in order to render his occupation more comfortable or convenient, and may be separated from it without doing substantial injury, such as furnaces, stoves, cupboards, and shelves, bells, bell-pulls, gas-fixtures, &c.; or things merely ornamental,— as painted wainscots, pier and chimney glasses, although attached to the walls with screws, marble chimney-pieces, grates, beds nailed to the walls, window-blinds, and curtains. All these articles, whether useful or ornamental, are in a manner necessary to the tenant's domestic comfort; and being easily severed from the house, are capable of being equally useful to him in any other house he may occupy, and therefore he may remove them. But things which he attaches in a more permanent manner, in order to complete it, such as hearth-stones, doors, and windows, closets, presses, locks, and keys, he can not take away, because such things are peculiarly adapted to the house in which they are fixed, and, if taken away, are injurious to the freehold. All substantial additions made to the house, also, become a part of the freehold, and are immovable; such as conservatories, greenhouses, hothouses, pigsties, stables, wash-houses, and other outhouses; neither can the tenant remove shrubbery or flowers planted by him in the garden." The propositions thus enunciated are well supported by adjudicated cases from courts of high repute, and are in line with text-writers upon this subject. Thus we see that such fixtures as are attached to the realty in a permanent manner, so as to become substantial additions, although erected by the tenant and for his convenience, attach to and become a part of the realty, and can not be removed by him as domestic fixtures. It is, however, claimed that at the time of the erection of the fixtures which the defendant in error asserted a right to remove, he intended to remove them at the expiration of his term, and that, having been erected with such intention, his right to remove them is preserved. This proposition is not a sound one. The right to remove such fixtures is denied him by the law; and no matter what his intention might have been at the time he erected them, such intention, in the absence of a contract with the owner of the land, would not avail to give him the right of removal. Mr. Ewell, in his work above cited, on page

41, says: "In order to give effect to the intention of a party not to make an erection a permanent accession to the realty, the person making the improvement must have the right to determine whether or not the erection shall become a part of the realty ; and if, as between himself and the owner of the soil, he has no right to erect the same as property separate and distinct from the freehold, an intention to do so, no matter how clearly manifested, is of no avail." It would therefore seem that the intention which the law considers is not the secret intention of the party who erects the fixture, but, except in the case of trade fixtures, the intention is indicated by the nature of the fixtures erected.    Therefore, while we find abundant evidence that the defendant intended to remove these fixtures at the expiration of his lease, we do not find that this intention was communicated and assented to by the owner of the land; and because the fixtures erected became a part of the realty, and are not embraced in the class known as trade fixtures, the uncommunicated intention to remove them would not give him a right to do so without the authority of the owner.    For the reasons above stated the trial judge erred in overruling the motion for a new trial.

*Judgment reversed.    All the Justices concurring.*