# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1904.

### JONES & COMPANY *v.* VENABLE *et al.*

A person or corporation actually engaged in the business of quarrying granite or other stone, who, for the successful prosecution of such business, needs a right of way for a private railroad. across the lands of others, is, under the constitution and laws of this State, in a case of necessity, authorized to obtain the same under condemnation proceedings.

Argued February 2, — Decided May 11, 1904.

Injunction. Before Judge Roan. DeKalb superior court. December 19, 1903.

*Rucker & Rucker*, for plaintiffs in error.
*J. D. Kilpatrick* and *J. W. Moore*, contra.

FISH, P. J. Francis Jones & Company, a partnership, had served upon W. H. and S. H. Venable, of DeKalb county, a notice under the Civil Code, §§ 4657 et seq., in which notice they stated that they had leased Rock Chapel Mountain, in that county, from its owners for the term of five years, and were engaged in quarrying granite from said property, and desired to condemn, for the period of five years, under the provisions of the code, a right of way, fifteen feet in width, for a railroad across a described strip of land owned by the Venables, the railroad to run from Rock Chapel Mountain, where the quarry was located, to a point on the Georgia Railroad at or near Lithonia, Ga. The notice designated the point at which and the manner in which the proposed railroad would cross the strip of land in question, named the person selected by the applicants to assess the damages for the right of way, and requested the Venables to select an assessor

1

for such purpose. The Venables then brought a petition to enjoin the applicants from proceeding further in their efforts to condemn the property for the purpose described in the notice, and from entering upon or otherwise interfering with the property of the petitioners. . The petition for injunction alleged that the condemnation sought to be made was contrary to law, for the following reasons: "(1) The enterprise of quarrying granite and marketing the same is purely private, and is one in which the public has no interest. (2) The road sought to be built is not a private way within the meaning of the constitution of this State. (3) It is not within the power of the General Assembly to enact a valid statute authorizing the condemnation of private property to the use of another for purely private purposes. Such an act would be null and void, would deny the owner the equal protection of the law, and would deprive him of his property without due process of law. (4) The General Assembly of Georgia has made no provisions for compensating the owner for the land condemned." The petition further alleged that the defendants threatened to enter, with their assessor, upon the land of the petitioners upon a given date, and, if no assessor should be appointed by the petitioners, to then apply to the ordinary of the county to appoint an assessor to act for the Venables, and to. build the railroad in question over the land of the petitioners against their will. Upon this petition a temporary restraining order was granted, and at the interlocutory hearing the court granted the injunction prayed for, to which judgment the defendants excepted.

The question involved in the case is, whether a person or corporation actually engaged in the business of quarrying granite or other stone, who needs, for the successful prosecution of such business, a right of way for a private railroad across the lands of others, may, in a case of necessity, acquire such right of way under condemnation proceedings. The Political Code § 650, provides that a person or corporation actually engaged in such business, who may need, for the successful prosecution of the same, such a right of way, may obtain it " in the same manner that the right to convey water across the lands of others may be acquired by the owners of mines, as provided by the Code;" and that manner, as we shall see later, is by condemnation. The court below held, that if, in the statute embodied in this section of the Polit-

ical Code, "it was the intention of the General Assembly to grant to private persons the right to condemn the land of another for the purpose of building a private railroad for the hauling of granite from a private quarry," the act was unconstitutional, and so granted the injunction prayed for. After a careful consideration of the matter, we have reached the conclusion that our learned brother of the trial bench erred in this ruling. We grant the contention of the defendants in error, that "the enterprise of quarrying stone and marketing the same is purely private and one in which the public has no interest." This being granted, the statute in question, as applied to this case, can not be held to be constitutional upon the idea that property condemned under its provisions will be condemned for a public use. Can property, under the Political Code, §§ 650 et seq., be condemned for a private use? The constitution of this State provides: "In cases of necessity, private ways may be granted upon just compensation being first paid by the applicant." Civil Code, § 5729. If, then, the rights of way provided for in these sections of the Political Code are private ways, the power of the legislature to authorize their establishment under condemnation proceedings, in cases of necessity, can not be questioned. The constitution does not undertake to define private ways, or to limit the purposes for which they may be granted. The only limitation upon the power of the legislature to provide for the granting of private ways is, that they can only be granted in cases of necessity. The defendants in error, however, contend that the rights of way provided for in the Political·Code, § 650, are not private ways. Their position seems to be this, that the rights of way dealt with in this section are neither public nor private ways. It is necessary for them to take and maintain this position in order to sustain their contention; for if the ways provided for are either public or private ways, then the power of the legislature to provide for their establishment, in cases of necessity, under condemnation proceedings, is clear under the constitution. If they are neither public nor private ways, what sort of ways are they? Ways they are, and they must be the one or the other; for, according to our understanding, all ways are either public or private. 1 Cooley's Blackstone (4th ed.), 458, note 2; 12 Enc. Laws of Eng. 571; 29 Am. & Eng. Enc. L. 30. There are different kinds of public ways and

different kinds of private ways, but all ways are included in the one or the other general classification, though some may partake of the nature of both, being maintained and operated for private gain and for use by the public. The common-law writers divided private ways into several classes, according to the purpose or purposes for which the right of way could be used. Thus Lord Coke, adopting the civil law, divided them into three kinds; a footway, called *iter*; a footway and horseway, called *actus*; and a cartway, which embraced the other two, called *via*. To which was added a driftway, a road over which cattle could be driven. Dyson *v.* Ballard, 1 Taunt. 279. Woolrych, in his work on the subject, also makes these four classes of ways: footways; footways and horseways; foot, horse, and carriage ways; and driftways. Woolrych, Ways, 1.

But these old classifications of private ways are not exhaustive of the subject; for as a private way for any particular purpose could always be created by a grant, and, in theory, always rested upon a grant, actual or implied, it is evident that when one person granted to another a right of way extending from the land of the grantee over the land of the grantor, for the private use of the grantee, in any manner and for any particular purpose, a private way was created. "These rights are in their extent susceptible of almost infinite variety: they may be limited both as to the intervals at which they may be used — as a way to church, and the actual extent of the user authorized — as a foot-way, horse-way, or carriage-way." Gale & Whatley on Easements, * 200. Thus, in Senhouse *v.* Christian, 1 T. R. 560, a case decided in 1787, it was held, that under the grant of a way, in gross, for carrying coal and other articles, described as "a free and convenient way, as well an horseway as a footway, as also for carts, wagons, wains, and other carriages whatsoever," the grantee had the right to lay a "framed waggon-way." In a note to the case it is said: "Mr. Law [who appeared for the plaintiff] explained a framed waggon-way to be formed by laying pieces of wood along the road at some depth in the ground on each side, at the distance of the wheels of the carriage, which were joined and kept fast together by bars at equal distances, the interstices being filled up with sand and gravel, so as to render the surface flat. They are now used for carrying the coals from most of the collieries in the north of Eng-

land." That was clearly a private way, and yet the method of its use was different from that of any of the classes of ways given by the common-law writers. Because the improved physical way used, and which the court held was authorized by the grant, was a kind of tramway did not render the way any the less a private way. In Dand *v.* Kingscote, 6 Mees. & W. 174, a grant of land had been made, reserving the mines within it, with sufficient " wayleave" and "stayleave," with liberty of sinking and digging pits. Parke, B., said: " There is no doubt that the object of the reservation is to get the coals *beneficially* to the owner of them, and therefore it should seem, that there passes by it a right to such a description of wayleave, and in such a direction, as will be reasonably *sufficient* to enable the coal-owner to get, from time to time, all the seams of coal to a reasonable profit ; and therefore the owner is not confined to such description of way as is in use at the time of the grant, and in such a direction as is then convenient." In that case the reservation of wayleave was contained in a deed executed in 1630, and the mine owner had constructed a railroad for the transportation of the coal from the mine across the lands of the plaintiff and others.

Washburn, in his work on easements and servitudes, in discussing this case, says : " If, therefore, in the progress of improvement, better or more feasible ways are devised and applied to use than those known and used at the time when the grant was first made, the mine-owner, under a reservation of this general form, might adopt the improved way ; as, for instance, he might substitute a railway for a wagon-way, by which to transport the coal from the pit across the granted premises, although the construction of such new way would subject the land-owner to the inconvenience of having it laid down in the place of the former one." Wash. Easm. & Serv. 291. Certainly the way reserved by the grant in that case was a private way, and it is equally clear that it did not cease to be such when the character of the physical way was changed to conform to the improved methods of transporting coal from the mines which had been devised long after the deed was executed. In 12 Encyclopædia of Laws of England, 575, it is said : " The term 'wayleave' means a right of way. . . In considering the extent to which a wayleave may be used, the very object of the grant or reservation to which it is ancillary

must be borne in mind, and this may involve a user of a different kind from that which was actually in contemplation at the time of the grant or reservation.    Thus in a grant of land excepting the mines, etc., and reserving to the grantor a 'sufficient wayleave' or 'necessary wayleave' to them, the mine owner is not restricted to the precise description of way in use at the time of the grant, but may from time to time avail himself of new appliances in order the more fully to carry out and enjoy the object for which the wayleave was granted, e. g. the getting of the minerals.    He may make waggon roads or tram roads on the site over which the wayleave extends, although such form of wayleave was unknown at the time when the reservation was made (see *Dand v. Kingscote*, 9 L. J. Ex. 279).    The same principle would, it is submitted, apply to a wayleave for any particular purpose."  ·  We have adduced, and quoted from, these authorities for the purpose of showing that, even under the common law, the contention, so earnestly pressed by the able counsel for the defendants in error, that such a right of way as the one involved in this case can not be a private way, is not sustainable.    But this court has already recognized that the term "private ways," as used in our State constitution, is broad enough to include a way of this character.    The decision in *Normandale Lumber Co.* v. *Knight*, 89 *Ga.* 111, treats and recognizes a tramway, to be constructed by a lumber company for the transportation of its lumber, naval stores, and timber, and to run from its own land, across the lands of others, to the line of a railway, as a private way.    In that case the ordinary of Dodge county granted an application of the lumber company for the construction of a tramway over certain lands belonging to other parties, over the objection of Knight, who claimed to be the owner of a lot of land over which the tramway was to run.    On certiorari, the judgment of the ordinary was reversed; and upon a review of the judgment of the superior court, this court held: "Under the constitution of this State, land can be taken for private ways only in 'cases of necessity.'    The evidence failing to show that the present case is one of necessity, the superior court did not err in sustaining the certiorari and reversing the judgment of the ordinary."  ·If the court had been of opinion that the right of way applied for, and granted by the ordinary, in that case was not a private way within the meaning of the con-

stitution, it would not have put its decision upon the ground that a case of necessity for the way was not shown.

Counsel for the defendants in error contend that "the case of *Garbutt Lumber Co.* v. *Georgia & Alabama Ry.*, 111 *Ga.* 714 et seq., settles the issue in favor of the defendants in error." The decision in that case in no way conflicts with the conclusion which we have reached in this. It is true that it was there held that "Sections 4657 et seq. of the Civil Code provide a method to be followed when private property is taken or damaged for public purposes, and the procedure therein prescribed can not be adopted when private property is sought to be taken for a purely private purpose." That ruling, as applied to the case then under consideration, was strictly correct, but considered as a general rule it is subject to exception. The procedure prescribed in these sections of the Civil Code could not be adopted in that case, for the simple reason that it is one which, in terms, is only applicable when property is to be condemned for public purposes, and had not been made by the legislature applicable to the taking or damaging of private property for such a private purpose as the one involved in the case then before the court. The method which the law has provided for the taking or damaging of private property for public purposes can not be adopted when such property is sought to be taken or damaged for a purely private purpose, unless the statute authorizing the taking or damaging for the particular private use has specially provided that the condemnation procedure shall be the same as that to be followed when the property is to be taken or damaged for public use. As the general method prescribed in sections 4657 et seq. of the Civil Code, in terms, applies only to cases in which the condemnation sought is for public purposes, when these sections alone are relied on as furnishing the condemnation procedure, it must appear that the condemnation is to be for a public purpose. But the legislature has made the provisions of these sections applicable in certain cases where the condemnation sought is for purely private purposes, and, of course, in such cases the method of condemnation provided therein can be lawfully resorted to. In the case upon which counsel relies it was sought to condemn private property for a purely private purpose, when the legislature had neither provided a special condemnation procedure applicable to such a case, nor made the general

method for condemning private property for public purposes applicable thereto.   Hence it was rightly held, that, irrespective of the question whether the legislature could lawfully authorize private property to be taken or damaged for the particular purpose for which it was proposed to condemn such property in that case, there could be no condemnation of such property, for the very sufficient reason that there was no law of force in this State which provided a method of condemnation applicable to such a case; and that until the legislature provided a procedure for ascertaining, and securing the payment of, compensation for the taking or damaging of the property, the act under which the authority to condemn was claimed was inoperative.   In the present case, the statute authorizing the condemnation is not inoperative for the want of a method of condemnation.   As we have seen, the Political Code, § 650 declares that the rights of way there provided for "may be obtained in the same manner that the right to convey water across the lands of others may be acquired by the owners of mines, as provided by the Code."   Section 658, which provides how the owner of a mine may obtain the right to convey water across the lands of others, declares that he "shall make his application under and according to the provisions and requirements specified in this Code, and all the proceedings in relation thereto shall be had, and the damages shall be assessed and paid, according to the method of condemning land in this Code provided, all of which are extended to the owners of mines desiring to drain their mines, and to carry off the water and tailings from their mines and mining operations, through or over the lands of others."   "The method of condemning land in this Code provided" is the general method for condemning land for public purposes embraced in the Civil Code, §§ 4657 et seq.   As all the provisions of these sections are extended to the case of a mine owner who seeks to obtain the right to convey water across the lands of others, and the railroad rights of way provided for in section 650 of the Political Code may be obtained in the same manner that a mine owner may obtain a right of way for conveying water, it is perfectly clear that the condemnation procedure to be adopted in a case of this character has been provided by the legislature.   The notice served by the applicants for the right of way upon the owners of the land which they sought to condemn showed that they were proceeding under sections 4657 et seq. of the Civil

Code, and this they had the right to do. In the petition for injunction, the question whether the right of way applied for was necessary was not made, nor was it passed upon by the trial judge, and hence this question is not before us. We may say, however, that the answer of the defendants seems to show a case of necessity.

*Judgment reversed. All the Justices concur, except Cobb, J., disqualified, and Evans, J., not presiding.*