45172, 45173. BENTON et al. v. GEORGIA MARBLE COMPANY; and vice versa.

(365 SE2d 413)

MARSHALL, Chief Justice.

This appeal involves a statutory proceeding under OCGA § 44-9-70, which provides, in pertinent part, that a person or corporation engaged in the business of metal or mineral mining, or quarrying marble, granite, or any other stone, may obtain a right-of-way for a railroad across the lands of others "in order to operate his business successfully."[1]

OCGA § 44-9-70 further provides that, "[a]ll proceedings in relation thereto shall be had and the damages shall be assessed and paid

---

[1] OCGA § 44-9-70 provides in full, "Any person, firm, corporation, company of persons, or corporation chartered under the laws of any state of the United States who is actually engaged in the business of mining iron, copper, gold, coal, or any other metal or mineral; quarrying marble, granite, or any other stone; or making copperas, sulphur, saltpeter, alum, or other similar articles and who needs a right-of-way for a railroad, turnpike, or roadway; an easement for pipelines or power lines; or a common road across the lands of others in order to operate his business successfully may obtain a right-of-way in the manner provided in this article for acquiring the right to convey water across the lands of others by the owners of mines. All proceedings in relation thereto shall be had and the damages shall be assessed and paid according to the method of condemning land provided in Title 22."

according to the method of condemning land provided in Title 22." Three alternative methods are provided in Title 22 for conducting a condemnation proceeding under the state's power of eminent domain, and assessing the amount of just and adequate compensation to be paid to the condemnee; of these three methods, a proceeding before a special master, OCGA § 22-2-100 et seq., was the method utilized here.[2] The special master entered an award recommending that the property interest sought to be condemned by the plaintiff be condemned by a judgment in rem upon payment into the registry of the court of $45,000, see OCGA § 22-2-110, representing the actual market value of the property interest sought to be condemned — the special master finding no consequential damages or benefits to the remaining property interests of the condemnees. See OCGA § 22-2-109 (c).

On appeal to the superior court, the superior court entered an order sustaining the findings of the special master. However, the court did not follow the special master's recommendation concerning the amount of compensation to be paid to the defendants, in that the defendants have a statutory right to a jury trial on this issue. See OCGA § 22-2-112, infra.

In Case No. 45172, the defendants/appellants/cross-appellees, Benton et al., appeal, and in Case No. 45173, the plaintiff/appellee/cross-appellant, Georgia Marble Company, cross-appeals. For reasons which follow, the judgment is affirmed in both cases.

## Statement of Facts

The railroad line that is the subject of this case is approximately 3.5 miles in length, and, under the special master's award, it is approximately 30 feet in width. It consists of 11.406 acres, and it is part of a larger tract which is in excess of 1,000 acres. The surface and subsurface rights to the larger tract are owned in joint tenancy by the parties to this suit,[3] and possibly others.[4]

The 3.5 miles of railroad track at issue here runs from what is known as Georgia Marble's Marble Hill quarry to the Tate, Georgia, railhead of the Seaboard System Railroad, previously known as the L&N Railroad Company. An 1884 lease granted the lessees and "their heirs and assigns" an exclusive right-of-way easement for a railroad line, beginning at the Tate railhead and running past the Marble Hill

---

[2] The other two methods are proceedings before an assessor, OCGA § 22-2-1 et seq., and proceedings before a court. OCGA § 22-2-130 et seq.

[3] Georgia Marble owns approximately 54% of the surface rights and 77% of the subsurface, mineral rights.

[4] Issues concerning the joint-tenancy ownership interests in the larger tract are currently being litigated in other proceedings.

quarry to the Allred quarry,[5] which, at the present time, is jointly owned by Georgia Marble and others. With certain modifications, the 1884 lease was renewed and extended by leases executed in 1926 and 1955; however, the leasehold agreement ultimately expired in 1984.

At its Marble Hill quarry, Georgia Marble produces a crushed and a ground limestone used in a variety of finished products. It uses the subject railroad track to transport a certain portion of both its finished and unfinished products from the Marble Hill quarry to the Tate station.

In regard to the question concerning the "necessity" on the part of Georgia Marble to have the exclusive right to use the railroad in order to ship products of the Marble Hill quarry to the Tate railhead, the special master found that the total average cost to Georgia Marble for maintenance of this railroad is approximately $200,000 per year, and that a loss of use of the railroad would result in reduced sales of products from the Marble Hill quarry with a consequent loss of approximately 30 employees at that quarry, as well as an approximate dollar loss of $1,000,000 per year on a pretax basis. The special master also found that in most instances, Georgia Marble's ability to be competitive with businesses selling the same products to customers in certain geographical areas depends upon Georgia Marble's ability to utilize the railroad. As an alternative mode of transportation, Georgia Marble could deliver its products to such customers by truck; however, as found by the special master, the additional expenses which would be thereby incurred by Georgia Marble would result in the previously described reduction in its ability to compete.

Consequently, the special master found that exclusive use of the railroad by Georgia Marble is necessary, and, therefore, this OCGA § 44-9-70 proceeding is likewise necessary.

### Superior Court's Order

Prior to the holding of the jury trial on the issue of valuation, the superior court entered an order addressing the "many unique and complex issues" which the court found to be raised in exceptions to the special master's award filed by certain of the defendants. The superior court sustained the special master's overruling of the defendants' challenges to the constitutionality of OCGA § 44-9-70; this ruling was based upon this court's decision in *Jones & Co. v. Venable*, 120 Ga. 1 (47 SE 549) (1904).

Citing *Kellett v. Salter*, 244 Ga. 601 (261 SE2d 597) (1979), the court further concluded that, since Art. I, Sec. III, Par. II, of the

---

[5] Georgia Marble has not advanced any argument that it is necessary that it be granted the easement in order to transport products from the Allred quarry.

Georgia Constitution, concerning "private ways" in cases of "necessity," does not establish any requisite criterion of "necessity" for the taking, OCGA § 44-9-70's definition of "necessity," based upon the need of the plaintiff for the right-of-way in order to operate its business successfully, is the appropriate standard to be applied here. Based upon what the court below referred to as "uncontroverted evidence" that Georgia Marble had met the requisite standard of necessity for a private taking under OCGA § 44-9-70, the court approved the special master's finding in this regard.

One of the defendants' arguments has been that, as a matter of law, Georgia Marble cannot establish "necessity" for the taking, since Georgia Marble, with a cotenancy interest in the underlying estate, has a mutual and nonexclusive right to use the railroad.[6] The court rejected this contention, although it noted that Georgia case-law authority on this specific issue is sparse.

The court further concluded that in the special master's award, Georgia Marble was not granted fee-simple title to the 11.406-acre tract, as suggested by the defendants, but rather that Georgia Marble was granted a perpetual, as well as exclusive, easement for the purpose of the maintenance and operation of the railroad.

The court went on to hold that OCGA § 44-9-40, providing for the grant of private ways across the lands of another when any person or corporation of this state owns an interest in real estate and has no reasonable means of access, ingress, and egress to such property, is inapplicable in this case, and, therefore, the requirement contained in OCGA § 44-9-40 (a), that private ways shall not exceed 20 feet in width, is likewise inapplicable.

Finally, the court rejected Georgia Marble's argument that the various leases granted it an irrevocable, permanent railroad right-of-way. And, the court ruled that, since the various items of hardware which compose the railroad track and ancillary equipment are trade fixtures, which may be removed by the tenant, the defendants are not entitled to compensation for the value of these improvements made at Georgia Marble's expense.

The facts, the various applicable statutory and constitutional provisions, and the case law in this area subsequently will be discussed and elaborated upon, insofar as is necessary for resolution of

---

[6] The question presented here is whether a joint owner of the underlying fee can establish necessity for exclusive use of an easement running across lands encompassed within the underlying fee, in that such joint tenant has a mutual and nonexclusive right to use the easement. Subsidiary questions exist as to whether exclusive use is necessary in that, under the facts of the case, mutual and nonexclusive use would be impracticable. However, such subsidiary issue has not been raised here. Therefore, the question for decision is whether as a matter of law, a joint tenant can establish "necessity" for exclusive use of an easement which runs across the underlying estate of the joint tenants. See Div. 2, infra.

the issues presented in these appeals.

*Case No. 45172*

In their appeal, the appellants raise, in essence, four issues. The first is whether the General Assembly is authorized under the Georgia constitutional provision concerning private ways to authorize the taking of such ways under variable "necessity" standards. The second is whether Georgia Marble's cotenancy interest in the underlying fee precludes it from condemning the easement.[7] The third is whether the condemnees are entitled to compensation for improvements to the subject property if condemnation of the easement is allowed. The fourth issue concerns the extent of the appellants' constitutional right to jury trial in this proceeding.

1. We hold that, under the decision of this court in *Jones & Co. v. Venable*, supra, OCGA § 44-9-70's "necessity" standard, which is based upon the successful operation of the applicant's business, is a valid exercise of the General Assembly's state constitutional authority with respect to the declaration of private ways of necessity.[8]

In the *Venable* case, the plaintiff was a partnership engaged in the operation of a granite quarry, which had been leased from the owners for a period of five years. Under the authority of § 650 of the Political Code, the plaintiff instituted a proceeding against adjacent property owners for condemnation of a railroad right-of-way across their land. Section 650 of the Political Code, a predecessor statute to OCGA § 44-9-70, provided "that a person or corporation actually engaged in [the business of quarrying granite or other stone], who may need, for the successful prosecution of the same, such a right-of-way, may obtain it 'in the same manner that the right to convey water across the lands of others may be acquired by the owners of mines, as provided by the Code'; and that manner . . . is by condemnation." *Venable*, supra, 120 Ga. at p. 2.

---

[7] Citing *Henson v. Dept. of Transp.*, 160 Ga. App. 521 (287 SE2d 299) (1981); *United States v. 1,453.49 Acres of Land*, 245 FSupp. 582 (S.D. Iowa 1965), aff'd sub. nom. *Brown v. United States*, 368 F2d 563 (8th Cir. 1966); and *Leach v. Dick*, 326 SW2d 438) (Tenn. 1959), Georgia Marble argues that condemnors have been allowed to exercise the right to condemn a panoply of estates less than fee-simple ownership. These cases cited by Georgia Marble involve situations in which a condemnor has no interest in the property to be condemned, and the defendants in the condemnation action occupy such relationships vis-a-vis one another as lessee and a lessor, as well as a life tenant and remainderman.

[8] In instances in which the state has delegated its power of eminent domain under what the parties refer to as the "public-purpose rationale," it has been held repeatedly that the necessity for the taking is a matter addressing itself to the discretion of the condemnor, subject to a showing that the condemnor has acted in bad faith or beyond the scope of its conferred powers. E.g., *Concept Capital Corp. v. DeKalb County*, 255 Ga. 452 (2) (339 SE2d 583) (1986); *Sweat v. Ga. Power Co.*, 235 Ga. 281 (3) (219 SE2d 384) (1975); *Leach v. Ga. Power Co.*, 228 Ga. 16 (7) (183 SE2d 755) (1971).

A petition brought by the defendants to enjoin the proceeding was granted by the trial court. The defendants argued that the quarrying and marketing of granite is a purely private enterprise in which the public has no interest, and it is not within the power of the General Assembly to enact a statute authorizing the condemnation of private property for a purely private use. The defendants also maintained that the requested right-of-way was not a private way within the meaning of the Georgia Constitution's provision concerning private ways (Georgia Constitution Art. I, Sec. III, Par. II, supra), which tersely provides: "In case of necessity, private ways may be granted upon just and adequate compensation being first paid by the applicant."

On appeal, this court reversed the trial court's grant of injunctive relief, holding that, although the granite quarry was a private enterprise in which the public had no interest, it was within the power of the General Assembly, under the state constitutional provision concerning the private ways of necessity, to authorize the condemnation of the railroad right-of-way there.

In *Venable*, this court cited *Garbutt Lumber Co. v. Ga. &c. Railway*, 111 Ga. 714 (36 SE 942) (1900), wherein it was held that, where certain provisions of the Code set forth the method to be followed when private property is taken or damaged for public purposes, such procedure cannot be adopted when private property is sought to be taken for a purely private use, in the absence of specific statutory authorization.

As held in *Venable*: "The method which the law has provided for the taking or damaging of private property for public purposes can not be adopted when such property is sought to be taken or damaged for a purely private purpose, unless the statute authorizing the taking or damaging for the particular private use has specially provided that the condemnation procedure shall be the same as that to be followed when the property is to be taken or damaged for public use." *Venable*, supra, 120 Ga. at p. 7. However, to the extent that it is intimated in *Garbutt* that public property may be taken for private use under the state's power of eminent domain, such intimation is incorrect. See *Jones v. North Ga. Electric Co.*, 125 Ga. 618, 626-627 (54 SE 85) (1906).[9] In any event, the taking in *Garbutt* was approved on the

---

[9] In *Jones*, this court sustained the constitutionality of the statute conferring upon owners of water powers, authority to exercise the right of eminent domain. In the course of so holding, this court noted that, under decisions cited in the opinion in *Jones*, "it is elementary that the State's right of eminent domain can never be exercised for other than [public] purposes." *Jones*, supra, 125 Ga. at p. 624. *Hand Gold Mining Co. v. Parker*, 59 Ga. 419 (1877); Cooley's Const. Lim. (7th ed.) 759. This was referred to in *Jones* as a "general rule." 125 Ga. at p. 625.

However, other statements of this court in *Jones* are applicable to this case. In noting

ground that the statutory provisions authorizing the taking were sustainable under the state constitutional provision concerning private ways; thus, the foregoing intimation was dicta only.

In regard to the applicable statutory provisions in *Venable*, the court noted that § 650 of the Political Code authorized the private way described therein to be acquired in the same manner as the owner of a mine may obtain the right to convey water across the lands of others, and § 658 of the Political Code provided, with respect to such water-rights proceeding, that " 'all the proceedings in relation thereto shall be had, and the damages shall be assessed and paid, according to the method of condemning land in this Code provided, all of which are extended to the owners of mines desiring to drain their mines, and to carry off the water and tailings from their mines and mining operations, through or over the lands of others.' " Id. at p. 8.

With respect to the constitutional question raised in *Venable*, this court held that the Georgia Constitution does not define private ways or limit the definition thereof, and private ways of necessity " 'are in their extent susceptible of almost infinite variety . . . .' " Id. at p. 4. On this basis, the court went on to hold that the legislature was empowered to enact this statute, authorizing condemnation of a railroad right-of-way when necessary for the successful operation of a stone or granite quarry, under the provision in the Georgia Constitution concerning private ways of necessity. Finally, the court in *Venable* noted that "the question whether the right-of-way applied for was necessary was not made, nor was it passed upon by the trial judge, and hence this question is not before us." Id. at p. 9.

Furthermore, as held by the trial court, *Kellett v. Salter*, supra, is authority in support of the proposition that the "necessity" standard for "private ways," within the meaning of the Georgia Constitution, is determinable by statute.[10]

2. We hold that condemnation of an easement against a party

---

that the question of what does and does not constitute a public use or purpose is dependent upon the facts of each case, with the particular facts of each case being hardly ever alike, this court stated: "There are many respectable authorities that hold that the right of eminent domain may be exercised wherever the public interest will be subserved, when directed to purposes tending to the development of the natural resources of the State . . . ." Id. at p. 626. However, the court also lodged the following caveat: "We do not mean to say that a use which only remotely tends to the public good or convenience will justify the exercise of the State's right of eminent domain. Such a position would lead to unreasonable results, for there is scarcely an industrial enterprise which has not the features of public benefit; but such is not the case which we now have under consideration. Here is the direct benefit to the State in developing its natural resources . . . ." Id. at p. 627.

[10] Specifically, it was held in *Kellett v. Salter*, 244 Ga. 601, supra (1), that, since Code Section 83-101 (b), OCGA § 44-9-40 (a), establishes a "no other reasonable means of access" test as the criterion for determining the necessity of a private way as a means of ingress and egress to landlocked property, this is the controlling test.

who has a cotenancy interest in the underlying fee is not prohibited as a matter of law, but is permissible in cases in which there is sufficient evidence establishing the "necessity" for acquisition of the easement and the exclusive use thereof. See *Browning v. N. C. State Hwy. Comm.*, 139 SE2d 227 (N.C. 1964); *Tucker v. Chicago &c. R. Co.*, 65 NW 515 (Wis. 1895); *Houston North Shore R. Co. v. Tyrrell*, 128 Tex. 248 (98 SW2d 786, 108 ALR 1508) (1936); 2 Nichols, The Law of Eminent Domain, § 5.07 [1] (1985).

3. The special master and the trial court did not err in concluding that the condemnees herein are not entitled to compensation for the value of the trade fixtures.

The reason for the correctness of this ruling is that, although fixtures are generally not removable by a tenant at termination of the lease (OCGA § 44-7-11; *Wright v. DuBignon*, 114 Ga. 765 (1) (40 SE 747) (1902); but see *Bibb County v. United States*, 249 F2d 228 (5th Cir. 1957)), there is an exception with respect to trade fixtures. OCGA § 44-7-12; *Charleston &c. R. Co. v. Hughes*, 105 Ga. 1 (30 SE 972) (1898); *Armour & Co. v. Block*, 147 Ga. 639 (95 SE 228) (1918); *Wright v. DuBignon*, supra; see generally Pindar, Georgia Real Est. Law, § 10-5 et seq. (1971). Cf. *City of Savannah v. Standard Fuel Supply Co.*, 151 Ga. 145 (106 SE 178) (1920). Consistent with this exception, it has been held that, where improvements were made by a railroad which were "of a character necessary for its business," in a proceeding by the railroad to condemn the railway line upon expiration of the railroad's lease, the condemnees were not entitled to compensation for the value of the improvements.

4. The final question in the condemnees' appeal is whether the trial court erred in denying their motion for jury trial "on all issues of law and fact." For the following reasons, we find this argument to be without merit.

The statute which established the special-master proceeding in condemnation actions was enacted in 1957.[11] OCGA § 22-2-100 et seq. (Ga. L. 1957, p. 387 et seq.).

Various of the statutory provisions are applicable herein. ". . . Insofar as concerns the right of the condemning body to take or damage the property or any interest therein, upon the payment of the amount awarded by the special master into the registry of the court, the award of the special master and the judgment of the court condemning the property or interest to the use of the condemning body shall be conclusive." OCGA § 22-2-107 (g); *Roberts v. Wise*, 140 Ga. App. 1 (230 SE2d 320) (1976); *Johnson v. Fulton County*, 103 Ga.

---

[11] Thus, the statutory provisions concerning special-master condemnation proceedings were not in effect at the time the *Venable* decision was rendered.

App. 873 (2) (121 SE2d 54) (1961); See n. 10, supra. OCGA § 22-2-111 goes on to provide, "Upon the entry of the award of the special master and the presentation of the award to the judge of the superior court, the judge shall enter a proper order and judgment of the court condemning the described property or other interest in rem to the use of the condemnor upon the condemnor's paying into the registry of the court the amount provided in the award of the special master." And, OCGA § 22-2-112 states, "In case any party is dissatisfied with the amount of the award, he may, within ten days after the award is filed, enter in writing an appeal from the award to the superior court of the county where the award is filed. At the term succeeding the filing of the appeal, it shall be the duty of the judge to cause an issue to be made and tried by a jury as to the value of the property or interest taken or the amount of damage done, with the same right to move for a new trial and file an appeal as in other cases at law. The entering of an appeal and the proceedings thereon shall not hinder or delay in any way the condemnor's work or the progress thereof."

In conformity with the foregoing statutory provisions, it has been held that, where the special master's award is appealed to the superior court, the trial judge serves as a finder of fact on all nonvalue issues, *MARTA v. Central Parking System*, 167 Ga. App. 649 (307 SE2d 93) (1983), and the appeal is a de novo proceeding. *Zuber Lumber Co. v. City of Atlanta*, 237 Ga. 358 (227 SE2d 362) (1976). In addition, the trial judge is required to rule on all legal issues. *Zuber Lumber Co. v. City of Atlanta*, supra. The sole jury question is the amount of the compensation award. Id.

It has been held that the Georgia Constitution (Art. I, Sec. I, Par. XI) guarantees the right to a jury trial only with respect to cases as to which there existed a right to jury trial at common law or by statute at the time of the adoption of the Georgia Constitution in 1798. E.g., *Williams v. Overstreet*, 230 Ga. 112 (195 SE2d 906) (1973). Thus, it has also been held that there is no state constitutional right to a jury trial with respect to proceedings of statutory origin unknown at the time the Georgia Constitution was adopted. *Strange v. Strange*, 222 Ga. 44 (148 SE2d 494) (1966). As demonstrated hereinabove, this is such a proceeding.

### Case No. 45173

In Georgia Marble's cross-appeal, it advances three arguments. First, Georgia Marble contends that the trial court erred in concluding that the renewals and extensions of the 1884 lease did not grant Georgia Marble an irrevocable easement in perpetuity for the railroad right-of-way, notwithstanding the leasehold termination. Second, Georgia Marble maintains that the trial court erred in concluding

that OCGA § 44-9-70 does not constitute a delegation of the state's power of eminent domain. Third, it is argued that the trial court erred in concluding that Georgia Marble is not entitled to be granted summary judgment on the issue of the "necessity" for the taking.

5. We hold that the trial court did not err in concluding, as a matter of law, that the renewals and extensions of the 1884 lease did not grant Georgia Marble a perpetual easement for the railroad right-of-way after termination of the lease.

As previously stated, the lease was entered into in 1884, and it was renewed and extended in 1926 and 1955. Under the 1884 lease, the lessees "and their heirs and assigns" were granted an exclusive right-of-way easement for the railroad from the Tate station, to the Marble Hill quarry, and then to the Allred quarry. This lease provided that in the event of the surrender of the lease, the rights-of-way to the Allred quarry would be determined by arbitration in the event the parties could not agree on the amount of damages.

Under the 1926 lease, there was a provision granting the lessee the right to transport over the railroad, marble quarried from lands other than those specified in the lease, upon payment of compensation for right-of-way and track privileges in the form of a trackage fee of 22 cents per car load of 15,000 pounds. Under the 1955 lease, this provision was retained, although there was an increase in the trackage fees.

The superior court ruled that it is "clear and unambiguous" that the leases nowhere grant Georgia Marble a perpetual railroad right-of-way upon cessation or termination of the leases, and that the provision in the 1884 lease concerning settlement for the right-of-way extending to the Allred quarry in the event of surrender of the lease, as well as the trackage-fee provision in the 1926 and 1955 leases applicable to marble products mined from land not owned by the lessees and transported over the right-of-way, "fatally undercut" Georgia Marble's argument. Specifically, the trial court ruled that the only construction of the leases consistent with the two foregoing lease provisions is that the lessors intended to retain ownership of the right-of-way; otherwise, there would be no necessity for the settlement clause or the trackage-fee provision. In addition, the court noted that the leases, which span a term of 100 years, clearly treat the surface rights as belonging to the lessors.

We agree with the trial court that, in view of the leasehold provision concerning arbitration of damages with regard to the rights-of-way to the Allred quarry in the event of termination of the lease, an argument that the lease documents grant the lessees "and their heirs and assigns" an easement in perpetuity is legally unsustainable.

6. Under the *Venable* decision, the trial court did not err in ruling that OCGA § 44-9-70 does not constitute a delegation of the

state's power of eminent domain with respect to property to be condemned for a public purpose.

7. Georgia Marble's argument, that the trial court erred in failing to grant summary judgment in favor of Georgia Marble on the issue concerning the "necessity" for the taking, is, in our opinion, a misinterpretation of the trial court's order. As we read the order, the trial court did grant summary judgment in favor of Georgia Marble on that issue.

*Judgment affirmed in Case Nos. 45172 and 45173. All the Justices concur.*

DECIDED MARCH 9, 1988.

*Glover & Davis, J. Littleton Glover, James H. Webb, Martha Tate Springer, Fine & Block, Paul R. Jordan,* for appellants.

*Hansell & Post, Gary W. Hatch, John G. Parker, John L. Watkins, Landrum & Landrum, Phillip M. Landrum, Jr.,* for appellee.