## JASPER COUNTY *v.* BUTTS COUNTY; *et vice versa.*

1. The act approved December 22, 1829 (Acts 1829, p. 27), which declared "That from and after the passage of this act the jurisdiction of Butts County be and the same is extended over the Ocmulgee river, and islands on said river, adjoining said county of Butts," properly construed, placed the whole of the river and islands therein, adjoining the County of Butts, as its boundary lines existed at the time of the passage of the act, within that county.

2. The provision, "Whenever a stream of water is the boundary of a county, the jurisdiction of the county shall extend to the center of the main channel of such stream," adopted in 1863, included in the several codes, and now found in the Civil Code (1910), § 32, is to be construed with other code provisions similarly adopted, and now contained in the Civil Code, as follows: "If there is a law in force, at the time of the adoption of this Code, having entirely a local application, such local law is not repealed by this Code, unless so expressly declared" (§ 11); and "The State is divided into one hundred and forty-six counties, whose boundaries and limits shall be ascertained by the several acts laying off the same, and those amendatory thereof" (§ 31). So considered, the code provision first mentioned did not operate to repeal the act of 1829, set forth in the first headnote.

3. Civil Code (1910) § 1069 is inapplicable to electric-light and power companies, required under the Civil Code, §§ 987, 988, 1019, to make their returns of property for taxation to the comptroller-general.

4. The allegation as to laches of the complaining county, in view of the foregoing ruling, is not well founded.

OCTOBER 3, 1914.

Petition for injunction. Before Judge Daniel. Butts superior court. October 18, 1913.

*W. S. Florence, A. S. Thurman,* and *F. C. Foster,* for plaintiff.

*W. E. Watkins, Hatcher & Smith,* and *Greene F. Johnson,* for defendant.

EVANS, P. J. This litigation is between the Counties of Jasper and Butts, and involves the taxation of the real estate of the Central Georgia Power Company's plant, which is located on real estate lying on the line between the counties and in both counties. The court's judgment was based on his ruling: (1) that the act of 1829, defining the line between the counties, was in force; (2) that Civil Code (1910) § 1069 is applicable to the returns of an electric-light and power company; and (3) that the County of Jasper was not in laches in raising the question.

1-2. Our holding on the first ruling is expressed in headnotes 1 and 2, and requires no further demonstration.

3. The general policy of this State is that the situs of real estate for taxation is the county where the land lies. On account of the peculiar circumstances of the case, certain exceptions have been made to this general policy. One is where a mine or plantation is on the line between two counties and in two or more counties; such are taxable in the county where the improvements or most of them are. Civil Code (1910), § 1065. Later on, in 1903, this exception was so extended as to embrace all manufacturing and other companies, whether incorporated or not, "other than railroad, telegraph, telephone, express, sleeping and palace-car companies," whose real estate or plant lies on or across a county line and in two or more counties. Civil Code, § 1069. In both of these exceptions the legislative purpose is manifest to deal with property devoted to private use and operated as a unit, situated on a county line and in two or more counties. This conclusion is irresistible, because the companies excepted from the operation of section 1069 are quasi public in their nature, and in respect to them a different mode of returning and paying taxes is provided. Real estate is required to be returned in the county where it is located, to the tax-receiver of that county; but corporations engaged in the performance of a public service, not including the mere right to be a corporation, or of trading or manufacturing, are required to make return of their franchises to the comptroller-

general. Civil Code, §§ 1019, 1020. The method of apportioning the taxes of railroads by the comptroller-general is provided in section 1036 et seq. In the general tax act of 1909, codified in the 8th title, chap. 1, art. 1 of the Code of 1910, it is provided that "The president, superintendent, or agents of all manufacturing and other companies, whether incorporated or not, other than railroad, telegraph, telephone, express, sleeping and palace-car companies, and such other companies as are required to make return of the value of their franchise to the comptroller-general under the provisions of sections 1019 to 1029, inclusive, . . shall return for taxation . . all of their real estate to the tax-receiver of the county wherein said real estate is located; provided that if the real estate upon which said manufacturing or other business enterprise of whatsoever nature is carried on lies on or across the county line or county lines, and in two or more counties, said real estate shall be returned to the tax-receiver of the county wherein are located the main building containing the machinery, or most of the main buildings," etc. Acts 1909, p. 65, Civil Code, § 987. By this section real estate of corporations other than those enumerated in the exceptions, located on the county line and in two or more counties, must be returned to the tax-receiver of the county wherein the main buildings containing the machinery or most of the main buildings are located. It is further provided, in the tax act of 1909 (Civil Code (1910), § 988), that all railroad companies, and all water, electric-light or power companies, as well as certain other companies therein enumerated, shall be required to make returns of all their property located in this State to the comptroller-general, "and the law now of force providing for the taxation of railroads in this State shall be applicable to the assessment of taxes from said business as above stated."

The general rule as to making tax returns was to make them to the tax-receivers of the counties. In regard to certain companies or businesses which the legislature considered to be impressed with a public use, or to be quasi-public in their character, they deemed it best to have the returns made to the comptroller-general. When the act of 1903 was passed only a limited number of companies were placed in this catalogue. It will be seen that in that act railroad, telegraph, telephone, express, sleeping and palace-car companies were excepted. It was provided that manufacturing

and other companies, except those just mentioned, and all persons owning and operating manufacturing and other plants, whose real estate or plant lies on or across a county line or county lines, and in two or more counties, "shall return for taxation their said real estate, together with the buildings and machinery thereon,   .   .   . in the county in which are located the main buildings containing machinery, or most of said main buildings, of said manufacturing and other plants, and shall there pay their taxes." Acts 1903, p. 15, Civil Code (1910), § 1069. This contemplated a return for taxation in a given county, and evidently had in view those cases where the return was made to the tax-receiver of a given county, as distinguished from the excepted companies which made returns to the comptroller-general. Later the act of 1909 was passed, a portion of which is embodied in the Civil Code (1910), §§ 987, 988. By the first of these two sections it is provided that the proper officer or agent of all manufacturing and other companies, "other than railroad, telegraph, telephone, express, sleeping and palace-car companies, and such other companies as are required to make return of the value of their franchise to the comptroller-general under the provisions of sections 1019 to 1029 inclusive, .   . shall return for taxation at its true market value all of their real estate to the tax-receiver of the county wherein said real estate is located; provided, that if the real estate upon which said manufacturing or other business enterprise of whatsoever nature is carried on lies on or across the county line or county lines, and in two or more counties, said real estate shall be returned to the tax-receiver of the county wherein are located the main building containing the machinery, or most of the main buildings." Other provisions in regard to personal property are not material to be quoted. It will be seen, from a comparison of this act with that of 1903, that both dealt with the question of real estate of a manufacturing company divided by a county line. In the act of 1909 (Civil Code, § 987) other companies were excepted besides those which had been excepted in the act of 1903 (Civil Code, § 1069). Still the same general purpose was evinced to distinguish manufacturing and other similar companies of a private nature, and the land used by them in a body in connection with their businesses, from companies treated as public or quasi public in their nature. The difference was that the later act enlarged this latter

class of companies which were excepted from the manner of making returns applicable to other companies. As to companies other than those excepted it was provided that they "shall return for taxation at its true market value all of their real estate to the tax-receiver of the county wherein said real estate is located." It was then provided that "if the real estate upon which said manufacturing or other business enterprise of whatsoever nature is carried on" is divided by a county line or county lines, such real estate "shall be returned to the tax-receiver of the county" wherein the main buildings, or most of them, containing the machinery are located. We think it is evident that the expression, "said manufacturing or other business enterprise of whatsoever nature," had reference to those falling within the general rule of making returns to the county tax-receiver, and did not apply to those which had previously been excepted. This is shown by the fact that the provision states that such real estate lying in more than one county shall be returned to the tax-receiver of a particular county. Inasmuch as the companies which had previously been excepted were required by the same act to make returns to the comptroller-general, this later provision could not by its terms have applied to them; for surely the legislature did not intend to provide that they should make their general returns to the comptroller-general, but that if a body of their land was divided by a county line they should make the return of it to a tax-receiver. This other provision would destroy the system provided for the assessment of taxes upon the excepted companies, and make it difficult if not impossible of application in a uniform manner.

By the Civil Code (1910), § 988, provision was made in regard to the assessment of taxes upon the companies which had been excepted in the preceding section. Here a number of companies were described by name, including electric-light and power companies. As to these it was declared that they should "be required to make returns of all property of said company located in this State to the comptroller-general, and the law now of force providing for the taxation of railroads in this State shall be applicable to the assessment of taxes from said business above stated." "The law now of force" in relation to the "assessment of taxes" in regard to railroads comprehends more than the mere question of the official to whom the returns shall be made, and includes the manner of

making the assessments. The electric-power company now under consideration fell within the provisions of section 988, by its express terms. If it should be held that section 1069 still applied to the returns of such a company where the land on which its main plant was located was divided by a county line,—suppose it should not only own such a tract of land, but should also own another tract connected with its business and also connected with the main tract by a line of wires and poles, and that this latter tract was not divided by a county line; would the two tracts be taxed differently? Certainly the tract divided by the county line would not be returned to the tax-receiver of any county as originally provided by the terms of section 1069. Shall it be declared that though the terms of that act can not be held to be still of force in relation to this power company, yet that we should render a judgment as to one part of the company's property in not conforming literally to that section, but by a sort of approximation that we should hold that one county ought to get the benefit of a return which can not now be made to it under that section, but that the comptroller-general should set aside that particular tract for the benefit of one county as to taxation, and should deal with it differently from the general system of assessing taxes provided for railroads, made by analogy applicable to this company? We have held that where two sections are embodied in the code which, literally construed, are in conflict, one of them arising from a legislative act later than that from which the other arose, this fact is to be considered in harmonizing the two sections. If necessary, the section arising from the later act will be held to have repealed or modified that arising from the earlier act. *Staten* v. *State,* 141 *Ga.* 82 (80 S. E. 850). Construing the code sections so as to harmonize with each other, certain companies, including electric-power companies, have been added to the exceptions originally provided in section 1069.

It is thus manifest that the legislative purpose to deal with real estate lying on a county line and located in two or more counties, as an exception to the general rule, is dependent upon whether such real estate contains a plant operated by a public-service corporation, or whether the plant is owned by other than a public-service corporation. The reason for such classification is apparent. A plantation, or a mine, or a manufacturing plant located on real estate lying on a county line, and in two or more counties, is regarded as

a unit, because the operations of such a plant are confined to the premises.  On the other hand, a public-service corporation of this kind, the wires of which extend through many counties of this State, and which has the power of condemnation, is more clearly to be analogized to the operation of a railroad than to the operation of a manufacturing company, whose physical activities do not extend beyond the real estate upon which the main buildings are located.  The legislature in its wisdom has seen fit by the foregoing sections to classify electric-light and power companies with railroad companies, rather than manufacturing companies not of a public or quasi-public nature, and to make the real estate of such electric and power companies taxable as railroads.

4.  In view of our conclusion on the proposition of law discussed in the preceding division, it is apparent that the charge that the complaining county is in laches is not well founded.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill.  All the Justices concur, except*

ATKINSON and HILL, JJ., dissenting.  Civil Code § 1069, codified from the act of 1903 (Acts 1903, p. 15), prescribes the taxing situs of land and the improvements thereon which compose the plants of all corporations except railroad companies and others therein excepted by name.  The provision as to taxing situs therein made is that where plants of companies comprehended by the statute, situated on one tract or body of land, are divided by the county line of two or more counties, the situs, for the purpose of taxation of the entire plant, shall be in the county in which are located the main buildings containing machinery or most of the buildings of the company.  In such case the county of the taxable situs of the company is entitled to the money derived from the county tax on the entire plant, to the exclusion of the other county or counties in which parts of the tract on which are situated the main buildings of the plant may lie.  *County of Walton* v. *County of Morgan,* 120 *Ga.* 548 (48 S. E. 243) ; *High Shoals Manufacturing Co.* v. *Penick,* 127 *Ga.* 504 (56 S. E. 648).  Electric-Power companies, though authorized to exercise the power of eminent domain at that time (Acts 1897, p. 68; *Jones* v. *North Ga. El. Co.,* 125 *Ga.* 618 (54 S. E. 85, 6 L. R. A. (N. S.) 122, 5 Ann. Cas. 526)), were not included among the companies excepted; and hence the provisions of section 1069 are applicable to them.  It was not intended by the

subsequent general tax act of 1909 (Acts 1909, p. 65, Civil Code, §§ 987, 988) to repeal section 1069 in regard to the taxing situs of property divided by county lines. Those sections do not purport to deal with the question of situs of property for taxation, but merely to deal with the subject of instrumentalities looking to administrative detail in the collection of taxes. Relatively to electric-power companies, tax returns are to be made to the comptroller-general under the Civil Code, §§ 987, 988, instead of to the county receiver of tax returns as theretofore, and taxes are to be assessed against such companies by the comptroller-general under the Civil Code, § 1038. But this was not intended to change the taxing situs of the property of such companies, so as to take from a county theretofore entitled, under the Civil Code, § 1069, to moneys derived from the taxation against property of such companies, and give it to another county. That would comprehend, as between counties, title to taxes leviable against companies subject to taxation under existing laws; and the statute did not purport to deal with any such question. It was merely intended that the comptroller-general should act in an administrative capacity in assessing taxes under existing machinery provided for such assessment against railroad companies, leaving the taxing situs of the plants of electric-power companies as theretofore provided under the Civil Code, § 1069; and if not divided by county lines, then, under the general law, in the county where the property is located. It would be the duty of the comptroller-general to recognize such situs in making the assessment of taxes. The latter part of Civil Code § 988 declared that "the law now of force providing for the taxation of railroads in this State shall be applicable to the assessment of taxes from said business as above stated." This does not make the railroad law a part of section 988, for the purpose of changing taxing situs of property, but is merely a provision for employment of machinery for administrative work in the assessment of taxes against property under the Civil Code, sections 1036-1038, inclusive. The assessment of taxes against property as here mentioned refers merely to administrative functions (1 Words & Phrases (Assessment in Taxation), 550), and is a different thing from declaring taxable situs of the property as between two counties contending for the right to money derived from such taxation. The general tax act, supra, considered in connection with the other sections of

the code, does not expressly or by necessary implication repeal that part of section 1069, which declares the taxable situs of property.

The judgment on the main bill of exceptions should be affirmed, and the cross-bill be dismissed. In connection with what has been said, the several sections of the code, above mentioned, should be read in their entirety. For convenience of reference they are here set out, as follows:

"§ 987. The president, superintendents, or agents of all manufacturing and other companies, whether incorporated or not, other than railroad, telegraph, telephone, express, sleeping and palace-car companies, and such other companies as are required to make return of the value of their franchise to the comptroller-general under the provisions of sections 1019 to 1029, inclusive, and all persons and companies conducting business enterprises of every nature whatsoever, shall return for taxation at its true market value all of their real estate to the tax-receiver of the county wherein said real estate is located; provided, that if the real estate upon which said manufacturing or other business enterprise of whatsoever nature is carried on lies on or across the county line, or county lines, and in two or more counties, said real estate shall be returned to the tax-receiver of the county wherein are located the main building containing the machinery, or most of the main buildings; provided, further, that all persons, companies and corporations, not excepted above, conducting any business enterprise upon realty not taxable in the county in which such persons reside, or the office of the company or corporation is located, shall return for taxation their stock of merchandise, raw material, machinery, live stock, and all other personalty employed in the operation of such business enterprise, together with the manufactured goods and all other property of such business enterprise, and notes and accounts made and the money used in the prosecution of said business enterprise on hand at the time for the estimation of property for taxation, including all personalty of whatsoever kind connected with or used in such enterprise in any manner whatsoever, in the county in which is taxable the realty wherein such business enterprise is located or carried on; provided, further, that the agent in this State of any person, firm, or corporation, resident without this State, who shall have on hand for sale, storage, or otherwise, as such agents, merchandise or other property, including money, notes, accounts, bonds,

stocks, etc., shall return the same for taxation to the tax-receiver of the county wherein the same may be, to be taxed for State and county purposes, as other property in this State is taxed.   .   .   .

"§ 988.   All railroad companies, street and suburban railroads, or sleeping-car companies, persons or companies operating railroads, or street railroads, or suburban railroads, or sleeping-cars in this State, all express companies, including railroad companies doing an express, telephone, or telegraph business, and all telephone and telegraph companies, person or persons doing an express, telephone, or telegraph business; all gas, water, electric-light or power, steam-heat, refrigerated-air, dockage or cranage, canal, toll-road, toll-bridge, railroad-equipment and navigation companies, through their president, general manager, or agent having control of the companies' affairs in this State, shall be required to make returns of all property of said company located in this State to the comptroller-general, and the law now of force providing for the taxation of railroads in this State shall be applicable to the assessment of taxes from said business as above stated.

"§ 1036.   On or before the first day of May, each railroad company in this State shall make an annual return to the comptroller-general, for the purposes of county taxation in each of the counties through which said road runs, in the following manner:   Said return shall be under the oath of the president or other chief executive officer, and shall show the following facts as they existed on the first day of April preceding, to wit:   first, the aggregate value of the whole property of said railroad company; second, the value of the real estate and track-bed of said company; third, the value of the rolling-stock, and all other personal property of said company; fourth, the value of the company's property in each county through which it runs.

"§ 1037.   Whenever the amount of the tax levy of any county through which the said railroad runs is assessed by the authority of such county, it shall be the duty of the ordinary thereof to certify the same and transmit such certificate to the comptroller-general; and the property of such railroad company shall be subject to taxation in each county through which the road passes, to the same extent and in the same manner that all other property is taxed, in the manner hereafter set out.

"§ 1038.   Whenever such certificate is received by the comp-

troller-general, he shall proceed to assess the amount of each and every railroad company's property, in each and every of said counties, in the following manner: First, it shall be assesssed upon the property located in each county, upon the basis of the value given by the returns. Second, the amount of tax to be assessed upon the rolling-stock and other personal property is as follows: As the value of the property located in the particular county is to the value of the whole property, real and personal, of the said company, such shall be the amount of rolling-stock and other personal property to be distributed for taxing purposes to each county. The value of the property located in the county and the share of the rolling-stock and personal property thus ascertained, and apportioned to each of such counties, shall be the amount to be taxed to the extent of the assessment in each county.

"§ 1069. All manufacturing and other companies, whether incorporated or not, other than railroad, telegraph, telephone, express, sleeping and palace-car companies, and all persons owning and operating manufacturing and other plants, whose real estate or plant lies on or across a county line or county lines, and in two or more counties, shall return for taxation their said real estate, together with the buildings and machinery thereon, and all personal property made by or used in connection with or for the purpose of operating said manufacturing or other plants (except money, notes, and accounts, and other like property), in the county in which are located the main buildings containing machinery, or most of said main buildings, of said manufacturing and other plants, and shall there pay their taxes; and the money, notes, and accounts and other like property may be so returned and the taxes thereon so paid, or the money, notes, and accounts and other like property may be returned in the county in which is located the principal office or the residence of said companies or persons, and the taxes on the money, notes, and accounts and other like property may be there paid."