## HARRELL et al. v. SOUTHEASTERN PIPE-LINE COMPANY.

JENKINS, Justice. These exceptions by property owners to the refusal of an injunction against condemnation proceedings by the defendant pipe-line company, to obtain a right of way for the transportation of gasoline and petroleum products, are controlled by the decision in the case of *Botts* v. *Southeastern Pipe-Line Co.,* 190 *Ga.* 689 (9 S. E. 2d,    ). Accordingly, it was error to refuse an interlocutory injunction.

*Judgment reversed. All the Justices concur.*

No. 13296. JUNE 21, 1940. REHEARING DENIED JULY 29, 1940.

*J. C. Hale,* for plaintiffs.

*Vance Custer, A. S. Clay, Hirsch, Smith & Kilpatrick,* and *E. D. Smith Jr.,* for defendant.

JENKINS, Justice. This case involving as it does the same questions as those in *Botts* v. *Southeastern Pipe-Line Co.*, which had been presented to the court at a previous call, it was not thought necessary to say more in its adjudication than follow what had been set forth in that case. As a motion for rehearing has been filed in both cases, the court has deemed it appropriate that the questions which are stressed by the motion should be discussed here. In order that the position of the movant may be made accurate and clear, we will quote at some length from the motion. But inasmuch, as will be noted from what is said on the motion for rehearing in the *Botts* case, as the original opinion in that case has been somewhat altered so as to meet some of the criticisms made in the motion, this opinion will be confined to what appear to be the essential contentions of the movant, and will not deal with any of the movant's criticisms of the opinion as originally rendered in the *Botts* case. However, before undertaking to consider directly these contentions, we will make some observations upon the general aspects of the case. This we do at the risk of some repetition, but for the sake of clarity in this presentation, and not because it is thought that what is here said is stated better than has been done in the *Botts* case, or even as well.

Title 36 of the Code states its subject-matter to be "Eminent Domain." Part II of title 36 states as its subject-matter, "Condemnation of Property. Procedure." Except as the sections of this part II of title 36 may have been subsequently amended, it is derived from the act of 1894, which was passed "to provide a uniform method of exercising the right" of eminent domain. The first section of part II is § 36-201, and states as its subject, "Meaning of 'persons,'" and is as follows: "The word 'persons' as herein used shall include individuals, partnerships, associations, and corporations, domestic or foreign; and shall include the singular as well as the plural." The next section, 36-202, in part II, states as its subject, "To what and to whom method of condemnation applicable." This section as amended by the acts of 1929 and 1937, by adding the last sentence beginning with the words, "The method herein referred to shall also apply," etc., now provides as follows: "The method of condemnation of property and assessment of damages hereinafter provided shall apply to con-

demnation by cities, counties, railroads, telegraph, canal, mining, and waterworks companies, drainage by counties, tramroads, lighthouses, and beacon constructions, and to all persons or corporations having the privilege of exercising the right of eminent domain. *The method* herein referred to shall also apply to persons who are or may be engaged in constructing or operating pipe lines for the transportation and/or distribution of natural or artificial gas; and upon persons who are or may be engaged in furnishing natural or, artificial gas for lighting, heating, and/or power purposes, and for the purpose of running pipe lines for the transportation and/or distribution of petroleum products." The original language of this section, as embodied in the Codes of 1895 and 1910, as has already been indicated, did not include the last sentence as embodied in the Code of 1933, pertaining to persons running pipe lines for natural or artificial gas, since the right of eminent domain was only given to them in the year 1929. The act of 1929, in addition to expressly conferring the right of eminent domain on persons running pipe lines for natural and artificial gas, also provided that the method of procedure, which had already been prescribed by the act of 1894, should apply. This was done by amending the Code section, now § 36-202, by adding the last sentence, which provided that "the method herein referred to shall also apply" to them. Since the original form of § 36-202, dealing with the method of exercising the right of eminent domain, was made to apply, not only to certain named persons, but to all persons "having the privilege," and since it was already a general rule in the construction of statutes that the present tense shall include the future (Code, § 102-102), it would seem that it might not really have been necessary for the act of 1929 to expressly make the procedure section applicable to those upon whom the right to condemn had been expressly bestowed by that act. But since the original provisions of the Code, § 36-202, had expressly mentioned a number of persons as having the right, and to whom it should apply, as well as providing by the omnibus clause that it should apply to all persons having the power, the legislature saw proper to expressly include the newly-created class as coming within the provisions of the procedure section, and § 36-202 was amended accordingly. This it might have done by simply interpolating the name of the new class in the body of the section after the names.

of those persons who originally were expressly mentioned; or it could, as it did in fact do, add a new sentence to the section, providing that the method of procedure should also apply to the new class, to wit, persons running pipe lines for natural and artificial gas. Inasmuch as the section dealt only with the method of procedure, and had nothing to do with the grant of the power itself, it is highly significant to note that the act of 1929 did not include in the amendment to this procedure section any sort of reference to the other provisions of the act, which expressly granted the right and power itself. Thus stood the Code, § 36-202, until the act of 1937. This act, relating to the running of pipe lines for petroleum products, merely amended § 36-202 by appending the last part of the last clause as it now stands. The act of 1937 differs from the act of 1929, in that the 1937 act at least did not in terms confer the right of eminent domain, as did the act of 1929 relating to pipe lines for natural or artificial gas.

As we understand the motion, it is not the contention, or perhaps we should say that it is not the main contention, of movant that a statute, which merely provides that a method of procedure in the exercise of the right of eminent domain shall apply to a named class of persons, operates by implication to confer upon such persons the right and power itself. That the act of 1894, as codified in the Codes of 1895 and 1910, establishing a uniform method of procedure for certain named classes of persons and for all other persons having the right, did not so operate, has been several times flatly adjudicated by this court. These decisions are quoted from in the *Botts* case, and will not be repeated here, except to quote again a sentence from *Ga. R. Co.* v. *Union Point,* 119 *Ga.* 809, 814 (47 S. E. 183), dealing with the original Code section under the act of 1894. In that case the court said: "This statute was certainly not intended to confer power, or to enlarge or supplement the meaning of any statute then in existence or which might thereafter be passed, but was simply intended to provide a general and uniform method of exercising a power which had been or should thereafter be given." It should be here stated, however, that, independently of the restricted subject-matter of the original Code section, now included in § 36-202, it could not under any plausible reasoning be taken to confer the power to condemn upon the class of persons there mentioned, for another and

different reason. The section, after referring to the class of persons therein named, in no wise sets up any particular purpose for which they were assumed to have the right to act; and so under no theory could it be reasonably contended that the original section intended to confer upon them undefined general powers of eminent domain. For this reason, the decisions referred to, though having a bearing upon the present case, are not controlling. It will be noted, however, that the decisions were not based upon the fact that a mere unlimited, blank grant of the power to condemn is not permissible, but upon the theory that the subject dealt with pertained to a uniform method of procedure. That the main contention of movant is not that a statute which merely provides that a method of procedure shall apply, even though it be for a stated particular purpose, carries with it by implication a grant of the right itself, is shown by the language of the motion, wherein it is stated that the bulk of their original brief was devoted to the argument "that the act of 1937 does expressly grant the right to use this power for certain new purposes not theretofore covered." Continuing, the motion says: "We did throw in the additional argument that it could also be said that a statement that the method should apply for a given purpose carried the implication that it could be used for that purpose. But we expressly asserted that there was no need to resort to this implication, because that was the express meaning of the language." We therefore interpret the motion to state as its main contention that the particular language of the act of 1937, amending Code § 36-202, when taken in connection with § 36-201, does in fact expressly grant the right and power itself.

With these preliminary observations, we now quote further and at some length from the motion for rehearing: "It is simply a matter of taking all the legislation on the subject and finding from all the acts involved what has been declared to be the legislative purpose." Counsel in their motion proceed to state that at the time the act of 1937 was passed certain things were quite definitely settled in the laws of this State on this subject, and then state them, as follows: "1. The process of granting the power of eminent domain to particular companies had been definitely and necessarily abandoned, since private charters were no longer granted after the constitution of 1877. General laws now cover

the matter. 2. From that time on, the process of legislation necessarily consisted of three things: (1) the class of persons who could exercise this power; (2) the method by which the power could be exercised; and (3) the purposes for which the power could be exercised." "This, of course," counsel say, "is what this court meant when it declared ·in *Jones* v. *North Georgia Electric Co.,* 125 *Ga.* 618 [54 S. E. 85, 6 L. R. A. (N. S.) 122, 5 Ann. Cas. 526], that 'it is not so much the character of the person exercising the right as the uses to which the object is to be applied.'" Counsel agree that "before a grant for a new purpose could be established by legislation, that legislation must, as the court says, clearly state an intention to grant the power for that purpose;" and continue: "May we here briefly turn to the act of 1937 and see the language used. It is this: 'For the purpose of running pipe lines for the transportation and/or distribution of petroleum products.' We then propound this question to the court: Is there any known or conceivable formula of words that could state more clearly than these an intent to make this power applicable to the particular purpose now before the court?" Proceeding, the motion says: "We come back then to the proposition, that when the act of 1937 was passed the settled scheme of the Georgia law had been to provide three things, as just enumerated, with respect to the power of eminent domain: (1) the persons who could exercise the power; (2) the method of exercising the power; (3) and the purposes for which the power could be exercised. Now the first two of these had already been fully established for all uses to which the power might then or thereafter be applicable. The persons had been defined by Code § 36-201; a new section added to the Code of 1933, pursuant to the new method of codification on this point adopted in that Code. This new section followed exactly the statement the court had made in *Jones* v. *North Georgia Electric Company,* that the character of the person was no longer material." In the motion this language is used: "The persons, as defined by Code, § 36-201, who could exercise the power (but, of course, only for *purposes authorized by law*), include all persons, associations, 'and corporations, domestic or foreign.' The act of 1929 undertook to define broadly ·the persons who could exercise the power of eminent domain for purposes authorized by law. It followed the general idea of *Jones* v. *North*

*Ga. Electric Co.,* that 'persons' were no longer the determinative element, but the determinative factor was the question of whether the purpose was authorized by law. It extended this rule of *Jones* v. *North Ga. Electric Co.* in the only respect that it needed to be extended to make it unlimited—that is, it included foreign corporations. Under § 3 of the act of 1929, all persons, including corporations foreign or domestic, are included within our eminent-domain statutes, and it remained only to determine whether the particular purpose was within the statute. The codifiers recognized the great importance of this step, and set up this provision as a new Code section, namely, § 36-201. Their work was, of course, adopted as statute when the Code of 1933 was adopted. The method of condemnation was also definitely fixed by law by Code § 36-202, which provided broadly that the method set out in the Code should apply to all who exercised the power. None of this, of course, extended the *purposes* for which the State's power might be used by the persons designated in § 36-201. It was still limited to those purposes for which the law sanctioned the use of this power in the method provided by law, but there was no limitation as to persons. The limitation was only as to the purposes and uses. The codifiers had definitely accepted *Jones* v. *North Georgia Electric Company* as meaning what it said." The motion states that its contention has been and is this: "The act of 1937 does expressly grant the right to use this power for certain purposes not theretofore covered;" that "other sections of the Georgia law already covered fully the persons who could exercise the power of eminent domain, and the method by which they could exercise it; and that an extension of the power by legislation into a new field required only the statement of the new purpose." Again, says the motion, the actual question raised is this: "Does the act of 1937, not standing alone, but in connection with the statutory scheme of which it becomes an integral part, express the legislative purpose that companies building pipe lines to transport petroleum products may exercise this power?" Again quoting: "Now when we consider it as a part of the statutory law of the State and in connection therewith, we are immediately brought back again to the proposition that with this statute added to our law, the statutes then provide that (1) companies, domestic and foreign (Code, § 36-201), (2) may exercise the method of con-

demning property provided by law (Code, § 36-202), (3) 'for the purpose of running pipe lines for the transportation and/or distribution of petroleum products.' (Acts 1937.) It is just as simple as that."

Quoting finally, the motion says: "The real question before the court is simply whether when the General Assembly says that this power shall apply for a given purpose, it means it can be used for that purpose." This is the question which movant says with underscored emphasis that this court must determine. · Considering for the moment the question just quoted, as propounded by movant, we think it might properly be said that no such question is involved, for the reason that, as we see it, the General Assembly has never said that "this power" shall apply for the given purpose. All that § 36-202, when taken alone or, as it should be, when taken together with § 36-201, says is that the *"method"* of condemnation shall apply to all persons, whether "individuals, partnerships, associations, [or] corporations, domestic or foreign, . . having the privilege of exercising" it. If persons running pipe lines for petroleum products have by some statutory provision been actually *given* the power, it is then, but then only, that the method of procedure could in any event be deemed applicable. If the act of 1937 had gone further, as did the act of 1929 with respect to pipe lines for natural and artificial gas, and had conferred upon movant the right and power itself, as distinguished from the method of its exercise, no such question as we are now considering could have been presented. We think it should be constantly borne in mind that Code § 36-202, of which the act of 1937 became an integral part, has made and has kept two things clear: first, that the subject-matter of the section relates merely to the method of procedure in condemnation proceedings; and second, that those with whom it deals are those and only those upon whom the right and power of condemnation has been conferred. Any right of eminent domain which the movant may have must come from a clause appended to and made a part of this particular section of the Code. Movant can not claim under the section, and at the same time disclaim or disregard the express language of the section itself. If the legislature had by independent statute declared that the method of procedure as provided by part II, title 36 of the Code should apply to persons running pipe lines for the purpose of trans-

porting and distributing petroleum products in a manner affecting the public welfare, then a somewhat closer question might have been presented, since there would be nothing to *specifically limit* the purpose to the method of procedure or the applicability of such a statute to persons already having the right to condemn, *as is the* case with the Code section under which movant must claim. But even then, in order for it to meet what has been quoted as movant's main contention, it would have to be construed as conferring the power expressly, and not by mere implication. As we construe the meaning and effect of movant's position, it is that, by virtue of § 36-201, all persons, whether individuals, partnerships, associations, and corporations, foreign as well as domestic, are once and for all expressly given powers to exercise the right of eminent domain; that by virtue of this Code section every one has it conferred as a dormant general right, which, upon being activated, is to be exercised in the manner provided by part II of title 36 of the Code; and that such a right is in fact activated, as pertains to any particular purpose, whenever the legislature might even so much as prescribe that some particular "method of condemnation" shall apply for such a particular purpose. This in our own language seems to be what the position leads to. It seems to us, however, that, at least as to persons or entities not coming under the express grant of power made by the act of 1929, the only purpose and effect of § 36-201 was to do that which the section itself states to be its purpose, and that which the language expresses, to wit, *define* the word "persons" as thereinafter *used* in part II of title 36 of the Code. Under this section, whenever the method of exercising the right of eminent domain is thereinafter made to apply to any "person," that word is to be taken and construed to "include individuals, partnerships, associations, and corporations, domestic or foreign; and shall include the singular as well as the plural." It does not appear to us that this section can be taken to mean anything more than what it explicitly states to be its purpose and what it actually says. Since nothing in part II of title 36 in any wise purports to *confer the right* of eminent domain on any person at all, the section which merely defines the word "persons" when thereinafter used with respect to method only would not seem to aid in conferring any such power. It is true, as the motion states, that before the act of 1929, from which § 36-201 was derived, this

court had said in *Jones* v. *North Georgia Electric Co.*, supra, that "it is not so much the character of the person exercising the right as the uses to which the object is to be applied." We believe that this statement was true then, is true now, and expresses what has ever been a sound principle of law. The extraordinary powers which the right of eminent domain confers have never been bestowed upon any save those who were engaged in particular objects and purposes which have been regarded by the State as so essential to the public welfare that even some of the fundamental rights of private property must be made to stand aside. The power of eminent domain has never been given for the *benefit* of *any* person, firm, corporation, or individual. We therefore agree with the idea expressed in the *Jones* case, that in a statute which in point of fact deals with the subject-matter of granting the right and power of eminent domain, and does in fact expressly make such a grant for a particular purpose involving the public welfare, then and in such a case the grant of the power of such *particular purpose* is the more important thing. It would seem that the legislature *could,* if it chose, restrict the grant to particular classes of persons as well as for particular purposes; but even if it should be assumed as true—which the writer, speaking for himself, is disposed to concede—that in a case where no restriction as to persons is made, those who might use the power for such a particular public purpose are sufficiently identified, and the mere use of the word "persons," which means everybody, with one possible exception which it is not necessary here to discuss, would not seem to add much, if anything to such a grant,—still, we do not think that any such assumption, if taken as true, is aided by the provisions of the Code, § 36-201.

Under the law as it existed at the time the Code of 1933 was adopted, a foreign corporation could not avail itself of the grant of the right of eminent domain without the express consent of the legislature, permitting such corporations to come within the purview of the grant. As to whether the codification of § 36-201 changed the then existing law, by making what is in fact a general grant of the power of eminent domain for a particular public purpose applicable to all foreign corporations, is a question which under our view of the case it is unnecessary to determine, since in any case there must be a clear and unequivocal grant of the power itself,

before any *prescribed method for its enforcement* can be exercised by any person or corporation, either domestic or foreign. Reference to foreign corporations has been made only for the purpose of stressing the idea that the grant of the power itself, which it is contended would thus indirectly change the existing law with reference to foreign corporations, must be clear and plain. We agree with movant that the legislature *could,* if it chose, not only grant the right of eminent domain to a new class by amending a Code section which deals with another and different subject-matter, but it could also in the same manner effect a radical change in the law by bringing foreign corporations within the scope of a general grant. We think, however, that a claim to the right as having been thus conferred would have to plainly and unequivocally appear, even if the nature of an extraordinary grant, giving to one person the right to condemn the property of another, did not so require.

Here we have a law embodied in the Code which states its purpose to be to provide a uniform method of procedure in exercising the right of eminent domain, and which explicitly provides that the method shall apply to certain named persons and all persons having the right. Thereafter, by the act of 1929, the right to condemn was expressly granted to a new class, and the uniform method of procedure, already provided, was made applicable to such new class. Thus far at least, the course of legislation has moved straight and smooth. Then comes the act of 1937, which on its face seems merely to say that the method of procedure shall also apply for the purpose of running pipe lines for petroleum products. Does not the construction sought by the motion for rehearing impose a sudden and violent jolt to what had been the even course of legislation? Without so much as a comma given for notice or warning, the amending clause of 1937 is construed so as to wrench the scheme of legislation into new and different directions—thereby, not only expressly conferring the right itself of eminent domain, but extending it to foreign as well as domestic corporations. So far as we can see, what the act of 1937, appended as an amendment to Code § 36-202, relates to is plain and unambiguous; that as respects this case, § 36-202 as it now stands means substantially this, and nothing more: the *method* of condemnation hereinafter provided shall apply to (certain named persons) and to all other persons who may have the right of eminent domain, including persons who may have it for the purpose of transporting petroleum products.

It might be mentioned that the use of the word "shall" in § 36-202 is indicative, not of a grant of power, which is never forced upon an unwilling recipient, but connotes what was, for the time, made the mandatory method of exercising a power which might be otherwise conferred. The statute is therefore not a *permission* to use a method of condemnation, but a *requirement* that such method shall be used whenever private property is sought to be taken for the purpose stated.

That this is the true and only purpose of the sections embodied in part II, title 36 of the Code is not only indicated by the designated subject-matter of part II, title 36, and by the designated subject-matter of § 36-202, as well as being manifest from the language contained in the body of the section itself, but is further so declared in an interpretation by the General Assembly itself in an act passed subsequently to the act of 1937 under which the movant claims. Under the act approved January 13, 1938 (Ga. L. Ex. Sess. 1937-1938, pp. 251, 253, 254), making another method of condemnation applicable to "all persons or corporations having the privilege of exercising the right of eminent domain," it was provided that such act authorizing an additional method should "not be construed as repealing Chapters 36-2 to 36-6, prescribing a method of procedure for the condemnation of private property, but as supplementary thereto and cumulative thereof."

Whether or not, if the act of 1937 had purported to confer the right of eminent domain, it could be taken as sufficiently describing the particular purpose as pertaining in whole or in part to the public welfare, so as to give it vitality in that respect, is a question which we do not think it necessary to determine. This is true because, just as was said with regard to whether the *persons* were particularly identified, the case has been made to turn upon the fact that no grant of power at all has been bestowed. It is mentioned here only for the purpose of suggesting that, while the reference to the purpose might be ample enough as relating to a required method of procedure, it would seem that, had a grant of the right and power itself been intended, the legislature would have been more definite and specific in setting forth the public character for which the right might be made to apply.

The controlling question involved in this case, from whatever angle it may be approached, appears to us to get back always to

whether the right of eminent domain has by the act of 1937, amending Code, § 36-202, when construed with § 36-201, been made to apply for the purpose of running pipe lines for petroleum products, or whether all that the provisions of the act of 1937, as appended to § 36-202, did or purported to do was to expressly make the method of procedure, already provided, apply to movant, as it already did to others having the right. Since it is not an open question that a statute, merely providing a method as to how the power to condemn must be exercised, can not be taken as impliedly conferring the power itself, it follows that even if it be assumed that the persons to whom the alleged grant of power is given are sufficiently identified, and even if it be assumed that the purpose to which the method is made applicable is sufficiently set forth as being one affecting the public welfare, and even though the method of procedure by one actually having the power may have been plainly prescribed, still, if the grant of the power itself has not been conferred, it will not be assumed that it exists merely because a method for its exercise has been made applicable. Long ago it was said by Judge Bleckley that where three are necessary, two equals nothing.

Once again we quote from the motion: "If the court is holding that a legislative statement that the power applies for a certain purpose does not mean that it can be used for that purpose, then the court ought to be willing to say so," and ought to be willing also to "point out how the power can apply for that purpose if it can not be used for that purpose." Again we say that, if the *power* of eminent domain has been plainly made to apply for a particular public purpose, then it would follow that it could be used for such purpose. If, however, the *power* for such a purpose has *not* been conferred, it follows just as plainly that a power not conferred can not be exercised.

Movant in its motion states that "a vast new enterprise, relying in good faith on this clear statement of legislative intent, has invested a tremendous sum in this State, which will be lost because of the court's action." We have thought it fit and proper at the risk of some repetition to present our views in the light of a more extended statement of counsel's position as elaborated in the motion for rehearing. Upon one proposition every one agrees: the extraordinary right of condemnation, which this court on one

occasion has referred to as a dangerous power, must be plainly and unequivocally granted; and in determining whether or not such a grant has in fact been made, the rule of strict construction must obtain. We think that the right of eminent domain is ofttimes a very necessary as well as a beneficent power, in that it contributes powerfully to the general public welfare. It is upon this theory that it is permitted to transcend what constitute some of the most important rights in private property. But in determining the legislative policy and the legislative intent as to whether such a power has in fact been conferred, the grant itself must plainly and unequivocally appear. The case has given the court much concern, not only because it involves the interests of many persons, but because the question itself is one of great public importance. The answer has not always stood out clear and plain. Sometimes the theory of movant as illuminated by the powerful legal mind of its counsel has seemed correct. But when we turn to the plain words of the Code, they speak for themselves in such a plain and unambiguous way as to prohibit any contrary theory which might by implication be evolved. This purpose, as we have indicated, was to provide a general method of procedure for the exercise of the right of eminent domain for public purposes by those to whom the right itself had been given.

If it were a new question as to whether the language in the caption of an act should be given the same enacting force as the body of the act itself, or whether language employed in the caption should be used to create ambiguities as well as to resolve them, there might, as to these questions, be cogent reasons urged pro and con. But neither of these propositions presents an open question. That loss, perhaps great loss, may result to one of the litigants, is highly regrettable. But this court feels that, in construing the law in accordance with the rules of construction governing cases of this sort, and as in our opinion we find the law to be actually written, it is not substituting its own will for that of the Legislature; but on the contrary, it but fails and refrains to encroach upon the field of legislation by judicially proclaiming that to be law which has never been enacted as such by the only branch of the government authorized so to do. *Rehearing denied. All the Justices concur.*